Minnie OLIVER et al.,
Plaintiffs-Appellants,

v.

CITY OF HIGGINSVILLE, Missouri, a
Municipal Corporation, et al.,
Defendants-Respondents.

No. KCD 27126.

Missouri Court of Appeals,
Kansas City District.

Sept. 2, 1975.

L. R. Magee, Kansas City, for plaintiffs-appellants.

Charles H. Green III, Green & Green, Higginsville, Robert L. Langdon, Bradley, Skelton & Schelp, Lexington, for defendants-respondents.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and TURNAGE, J.

PER CURIAM.

An effort by Higginsville, Missouri, a fourth class city, hereinafter referred to as the "City", to regulate and control the collection, removal and disposal of garbage, trash and rubbish is the genesis of this litigation.

On August 6, 1973, the City enacted Ordinance No. 707, a comprehensive ordinance directed toward achieving the above mentioned objectives within its corporate limits. The salient definitions and provisions contained in said ordinance are hereinafter paraphrased. "Authorized Collector" is defined as the person with whom the City contracts for the collection, removal and disposal of garbage, trash and rubbish. "Residential User" is defined as any person or family unit living in a private dwelling "using the service of the Authorized Collector". Provisionwise, the Authorized Collector was given the exclusive right to collect, remove and dispose of garbage, trash and rubbish[1] from within the City, provided, however, that nothing contained in the ordinance was to be construed as prohibiting any person from (a) disposing of garbage in an "approved mechanical garbage disposal unit", or (b) "the removal by any person of his own garbage, trash and rubbish and disposal thereof at the disposal area of the Authorized Collector or on the owner's premises in a sanitary manner to prevent a nuisance or hazard to the health of the public." Said ordinance required the Authorized Collector to pay to the City a yearly "franchise fee", and imposed certain bond, insurance, equipment, frequency of

---

1. "Garbage", "Trash" and "Rubbish" were separately defined in the ordinance.

collection and disposal area [2] requirements upon the Authorized Collector. The ordinance further spelled out requirements as to approved containers, on premise storage of garbage, trash and rubbish awaiting disposal, the accumulation thereof, and the burning of trash and rubbish. Additionally, the ordinance fixed a maximum monthly fee which the Authorized Collector could charge Residential Users for collecting and disposing of their garbage and trash, and provided that said monthly fees were to be included on each Residential User's monthly utility bill and collected by the City for and on behalf of the Authorized Collector. As remuneration for said collection service the City was to receive seven percent of all monthly charges collected for and on behalf of the Authorized Collector. In concluding the aforementioned overview of said ordinance, it should be noted that it contained a penalty clause for violation of its provisions.

Simultaneously with the enactment of Ordinance No. 707, the City enacted Ordinance No. 708. This latter ordinance repealed an existing ordinance, Ordinance No. 642, and further authorized and directed the Mayor and City Clerk of Higginsville, on behalf of the City, to execute a "franchise contract agreement" with Robert L. Gibler, d/b/a Gibler Disposal Service, for the collection, removal and disposal of garbage, trash and rubbish for a period starting September 1, 1973, and ending August 31, 1977. This enabling ordinance embodied the terms of the "franchise contract agreement", the latter subject to being appropriately described as conforming with the definitions and provisions of Ordinance No. 707, and also effected a mutual rescission of an earlier contract authorized by Ordinance No. 642 which had been entered into between Gibler and the City concerning the same general subject matter. It is important to note that Ordinance No. 642, which was repealed by Ordinance No. 708, was never offered or introduced into evidence. Brief testimonial references alluding to it indicated that it was an enabling ordinance which authorized the Mayor and City Clerk of Higginsville, on behalf of the City, to execute a contract with Robert L. Gibler, d/b/a Gibler Disposal Service, to collect, remove and dispose of garbage, trash and rubbish on some type of a "subscription" basis. It is important to further note that the contract authorized by Ordinance No. 642, although executed and entered into, was never offered or introduced into evidence. Again, brief testimonial references alluding to it indicated that the City played no part in collecting the charges incurred by users for the removal and disposal of their garbage, trash and rubbish and that its expiration date coincided with the expiration date of the "franchise contract agreement" executed pursuant to Ordinance No. 708. However, without the benefit of the earlier contract entered into pursuant to Ordinance No. 642 it is impossible to tell from the record whether the obligations impressed upon the Authorized Collector by the subsequent "franchise contract agreement" were less onerous, comparable, or more onerous, financial and otherwise, than those impressed upon him by the earlier contract.

In view of the subsequent dispositional basis of this appeal, the above resume of said ordinances serves no edifying purpose other than providing a verbal montage of the facts which initiated the litigation which ultimately reached this court on appeal.

Appellants herein, who denominated themselves as "legal residents, voters and taxpayers" of the City, filed suit for "declaratory judgment and permanent injunction" challenging the validity of Ordinances No. 707 and No. 708. Respondents herein, the City, its Mayor and Aldermen, and Robert L. Gibler, d/b/a Gibler Disposal Service

---

**2.** The Authorized Collector was required to provide at his own expense a sanitary landfill area that complied with the requirements of Sections 260.200–260.245, RSMo Supp.1973, and as subsequently amended, and all laws and regulations promulgated by the State Board of Health of the State of Missouri pursuant thereto.

(the "Authorized Collector"), were joined as defendants. The gist of appellants' attack on the ordinances at the trial level was that they were "contrary to the laws of the State of Missouri and contrary to the Constitutions of the United States and the State of Missouri" in certain "particulars". Their petition failed to specify any state or federal constitutional provision claimed to have been violated. Instead, their attack, as disclosed by their petition, was hazily cast in the following language:

"5. That the Ordinances No.'s 707 and 708 are contrary to the Laws of the State of Missouri and contrary to the Constitution of the United States and the State of Missouri, in the following particulars, to-wit:

"a. In enacting ordinances that attempt to deprive these Plaintiffs of their right to their liberty and the use of their property.

b. In enacting ordinances that give private citizens exclusive franchise rights providing for negotiation of the payment of these rights during the pendency of such franchise.

c. In enacting ordinances that permit the Defendants to release or extinguish, in whole or in part, an alleged indebtedness or obligation to the Defendant municipal corporation.

d. In enacting ordinances that affirms contracts with private individuals for additional consideration after a contract has been entered with that private individual and has been performed in part.

e. In enacting ordinances that demand and require payment for services rendered and the unlawful deprivation of other public utility services if such demanded and required payments are not made.

f. In enacting ordinances that affirms contracts with private individuals demanding the use, by the Plaintiffs here, of services of that private individual that are contrary to the laws of the State of Missouri."

The trial court entered judgment in favor of defendants, respondents herein, declaring the ordinances valid and denying injunctive relief.

On appeal, the appellants, plaintiffs below, contend in their brief, under "Points Relied On", that "The judgment of the trial court that the City of Higginsville Ordinances # 707 and # 708 are constitutional and enforceable is contrary to the constitution and law of Missouri", and rely upon the following, set forth verbatim, to support this sweeping allegation:

"1. The ordinances violates the constitution of Missouri by granting extra compensation to contractor after contract has been entered into and performed in part.

(Citation of authorities omitted)

2. The defendants' exercise of police power is unreasonable depriving plaintiffs' right to life, liberty and the pursuit of happiness granting exceptions to some and refusing others.

(Citation of authorities omitted)

3. The defendant city has contracted away its police power to a private individual with no provision for protection for aggrieved citizens from said contractor.

(Citation of authorities omitted)

4. Citizens have right to seek judicial declaration of legislative enactment which concern them.

(Citation of authorities omitted)"

■ Points 1, 2, 3 and 4 will be treated in inverse order. As to appellants' fourth point, it amounts to nothing more than an abstract statement of law and presents nothing for appellate review. Rule 84.-04(d); *Kansas City v. Garza*, 493 S.W.2d 659 (Mo.App.1973); and *Hamil v. Hamil*, 488 S.W.2d 300 (Mo.App.1972). In the common vernacular, appellants' fourth point is "no point at all".

■ Returning to appellants' first, second and third points, this court has literally groped to correlate the allegations set

forth in appellants' petition with these remaining points. This burdensome task has been totally unavailing with respect to appellants' third point. Even the most strained and liberal construction of the allegations in the petition fails to reveal anything that remotely resembles appellants' third point. This point emerges for the first time on appeal bereft of any supportive pleaded allegation or evidence. It is axiomatic that issues unpleaded and never urged at the trial level may not be raised on appeal. *S. S. & W., Inc. v. Kansas City,* 515 S.W.2d 487, 489 (Mo.1974); and *Gilliam v. Gohn,* 303 S.W.2d 101, 108 (Mo.1957). The resulting consequence is that appellants' third point will not be considered on appeal.

Returning to appellants' first and second points, this court reiterates its previously mentioned difficulty in correlating them with any pleaded allegation or allegations in appellants' petition.

▆▆▆ Appellants cite Mo.Const. Art. 1, § 2, which has been equated to the equal protection clause of the 14th Amendment of the United States Constitution, *King v. Swenson,* 423 S.W.2d 699, 705 (Mo. banc 1968), since both proscribe invidious discrimination, as supportive authority for their second point. Appellants make no mention of Mo.Const. Art. 1, § 10, which proscribes the deprivation of any person's "life, liberty or property without due process of law". The only allegation in appellants' petition that bears even a faint resemblance to their second point reads: "In enacting ordinances that attempt to deprive these Plaintiffs of their right to their liberty and the use of their property." This language is a far cry from pleading facts and alleging that said ordinances were invidiously discriminatory and violative of appellants' right of equal protection as guaranteed by Mo.Const. Art. 1, § 2. The pleaded language appears more susceptible of being construed as a contention by appellants that the controversial ordinances deprived them of their liberty and the use of their property "without due process of law" (Mo.Const. Art. 1, § 10). The referenced

allegation, as pleaded by appellants, was so perfunctory that it failed to give the trial court even the slightest hint that the ordinances, as belatedly contended on appeal, were under attack as violating the equal protection clause of the Missouri Constitution (Art. 1, § 2). The Supreme Court of this state has seen fit to lay down stringent procedural requirements regarding the raising and preservation of constitutional provisions. In the frequently cited case of *City of St. Louis v. Butler Co.,* 358 Mo. 1221, 219 S.W.2d 372, 376 (Mo. banc 1949), they are collectively stated as follows:

> "It has long been the law that the question must be raised at the first available opportunity: *Woodling v. Westport Hotel Operating Co.,* 331 Mo. 812, 819(2), 55 S.W.2d 477. The sections of the Constitution claimed to have been violated must be specified: *Robinson v. Nick,* 345 Mo. 305, 309(5), 134 S.W.2d 112, 115(11). The point must be presented in the motion for new trial, if any: *Red School Dist. v. West Alton School Dist.,* Mo.Sup., Div. 2, 159 S.W.2d 676, 677(2). And it must be adequately covered in the briefs: *McGuire v. Hutchison,* 356 Mo. 203(4), 201 S.W.2d 322, 327(8)."

At the trial level appellants completely ignored compliance with the procedural requirement that "sections of the Constitution claimed to have been violated must be specified." The rationale of this tightly constricted and zealously adhered to procedural requirement is self-evident when viewed in conjunction with appellants' second point. It is impossible to tell from appellants' pleaded allegation whether they were attacking the ordinance at the trial level on the basis of due process or equal protection. The indecisive nature of the pleaded allegation vividly demonstrates the purpose which the requirement seeks to serve. The requirement is obviously directed toward fusing pleaded facts with a particular constitutional provision in order that a trial court may determine whether the pleaded facts run afoul of the constitu-

tion. Otherwise a trial court is relegated to the laborious task of attempting to equate the allegations of a petition and the evidence with each and every article and section of the constitution to determine whether or not a constitutional violation has occurred, and if it fails or is unable to do so, of resorting to rank speculation as to what constitutional provision, if any, may have been violated. Neither suggested alternative is satisfactory; the patent frailties of said alternatives point up the logic of requiring that sections of the constitution claimed to have been violated be specified. Moreover, on appeal, an indifferent or careless relaxation of said procedural requirement throws the matter of constitutional issues open to the unbridled after-thoughts of parties and counsel. Since appellants failed to specify at the trial level, by way of pleadings or otherwise, the constitutional provision claimed to have been violated by their amorphous allegation, their second point is not deserving of appellate consideration. It seems irrefutably fundamental that if a constitutional issue is not properly raised at the trial level nothing in the nature of a constitutional issue exists to be preserved for appellate review. Rigid adherence to the procedural requirements encompassing constitutional issues rests in the belief that maximum input should be obtained at every level of the judicial process. *Allright Grand, Inc. v. Kansas City,* 515 S.W.2d 890, 893 (Mo.App.1974). The courts of this state have been chary of carving exceptions to procedural requirements surrounding the raising and preservation of constitutional issues and no compelling reasons emerge for doing so regarding appellants' second point.

■ Attention finally focuses on appellants' first point. This point, citing Mo. Const. Art. 3, § 39(3) as supportive authority, reads: "The ordinances violates the constitution of Missouri by granting extra compensation to contractor after contract has been entered into and performed in part." The aforementioned appears susceptible of being correlated with paragraph 5(d) of appellants' petition which reads: "In enacting ordinances that affirms contracts with private individuals for additional consideration after a contract has been entered with that private individual and has been performed in part." Mo.Const. Art. 3, § 39(3) reads: "The general assembly shall not have power: . . . (3) to grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part; ". It is difficult to perceive and impossible to conclude that paragraph 5(d) of appellants' petition fairly apprised the trial court that appellants were invoking Mo.Const. Art. 3, § 39(3), a somewhat obscure and infrequently mentioned constitutional provision, as a basis for invalidating the ordinances. This court is constrained to hold that the reasons and authorities disavowing consideration of appellants' second point dictate a like result respecting appellants' first point. Any further expatiation on the reasons underlying strict compliance with the firmly entrenched procedural requirements pertinent to the raising and preservation of constitutional provisions appears unnecessary. Harsh as the result for failure to comply may be, any pangs of doubt emanating from their strict enforcement pale when viewed in light of the confusing and speculative decisional atmosphere in which constitutional issues would be placed in the total judicial process if the procedural requirements went unenforced.

■ Appellate review of court tried cases de novo upon both the law and the evidence, as held in *DeBow v. Higgins,* 425 S.W.2d 135, 140 (Mo.1968), is "limited . . to the specific matters urged on appeal". See also: *Schlanger v. Simon,* 339 S.W.2d 825, 828 (Mo.1960); *Dill v. Poindexter Tile Company,* 451 S.W.2d 365, 371 (Mo.App. 1970); and *Yates v. White River Valley Electric Co-operative,* 414 S.W.2d 808 (Mo. App.1967). Since appellants failed to

present any viable issues for appellate review, the inevitable result, however anomalous, is that no "specific matters" have been "urged" by them on appeal and, accordingly, the judgment below is affirmed.

Judgment affirmed.