**J. A. A., Petitioner-Respondent,**

v.

**A. D. A., Respondent-Appellant.**

**No. 39801.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 24, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 18, 1979.

George D. Johnson, St. Louis, for respondent-appellant.

Richard R. Russell, Kirkwood, for petitioner-respondent.

SNYDER, Presiding Judge.

Husband appeals from a dissolution of marriage decree. The appeal was transferred to this court, without opinion, from the Missouri Supreme Court. The husband, respondent below, claims the trial court erred in: (1) finding the marriage was irretrievably broken and converting a decree of legal separation into a decree of dissolution; (2) receiving into evidence a child custody report and the investigator's testimony; (3) refusing to issue a writ of body attachment to secure the testimony of two subpoenaed witnesses and refusing to allow the child-custody worker to testify as to the wife's alleged statements about extramarital sexual relations; (4) making its awards of child support, maintenance and attorneys' fees and failing to divide the marital debts; and (5) refusing to grant his request for separate maintenance. It is this last issue which the husband claims raised a constitutional issue under the exclusive jurisdiction of the supreme court.

The judgment is modified and, as modified, affirmed.

The parties were married in 1959 and separated in March of 1975 when the wife left the family home. At the time the petition for dissolution was filed the wife was 33 and the husband was 37 years old. They have three sons, aged 17, 15 and 13 years at the time of trial in 1977.

In her petition for dissolution the wife stated the marriage was irretrievably broken in that she could no longer reasonably be expected to live with her husband because he: (1) forced their children to work long hours in his Volkswagen repair shop; (2) was domineering in the family's affairs; (3) held two jobs and was not able to offer her companionship; (4) used vulgar language in front of the children; and (5) had

threatened her and physically assaulted her because she sought dissolution of their marriage and custody of the children. In his answer the husband denied the marriage was irretrievably broken. He later filed a cross-bill for legal separation, separate maintenance or, in the alternative, dissolution of marriage. At trial the husband denied the marriage was irretrievably broken.

Following the trial the court granted the husband's motion for legal separation but denied his motion for separate maintenance. Custody of the three sons was granted to the wife, and she was awarded $25 a week child support for each child. Maintenance of $25 a week for a period of two years was awarded to the wife, contingent upon her working thirty hours or less each week. She was also awarded $100 a month for 27 months as further maintenance. All personal property was awarded to the party then in possession. To adjust the property division the wife was awarded $750, payable at the rate of $50 a month. The trial court's decree did not mention the parties' debts of $13,271. The wife was also awarded $750 in attorneys' fees which was in addition to an earlier award of $350 pursuant to a motion for temporary allowances.

On March 11, 1977 the court, on its own motion, transferred custody of the eldest son to the husband and deleted the order of child support for him.

One hundred and twelve days after entry of the decree of legal separation, the trial court granted the wife's motion for dissolution, finding that the marriage was irretrievably broken and that there remained no reasonable likelihood that it could be saved. The division of property, maintenance, custody, support and attorneys' fees orders remained unchanged. The husband's appeal to the supreme court, and subsequent transfer of the cause to this court, followed.

In his first point of error the husband launches a two-pronged attack: (1) the trial court's finding of irretrievable breakdown was either against the weight of the evidence or not supported by substantial evidence, and (2) the trial court erred in converting the decree of legal separation into a decree of dissolution of marriage. Both arguments are rejected.

Section 452.305.1(2)[1] states that the trial court shall enter a decree of dissolution when it finds "that there remains no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken." Section 452.305.2 provides, "If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form." Although not expressly required by the language of the statute, it logically follows that a decree of legal separation may only be entered following a finding by the trial court that the marriage is irretrievably broken. See *Smith v. Smith*, 561 S.W.2d 714 (Mo.App. 1978); *McRoberts v. McRoberts*, 555 S.W.2d 682 (Mo.App.1977). Where one party to the marriage has denied irretrievable breakdown, the same requirement imposed for a dissolution—that the party seeking dissolution shall satisfy the court of one of the five facts listed in § 452.320.2(1)(a)–(e)—should be imposed before the trial court enters a decree of legal separation.

By asking for a legal separation while denying irretrievable breakdown the husband, in effect, took the position that while the marriage, in his opinion, was not irretrievably broken, in the event the trial court should so find, the decree should be in the form of a legal separation rather than in the form of a decree of dissolution of the marriage. The question for resolution on appeal now is whether the wife produced sufficient evidence to satisfy the trial court that the husband had behaved in such a way that she could not reasonably be expected to live with him. § 452.320.2(1)(b). In applying this section, the court in *Gummels v. Gummels*, 561 S.W.2d 442, 443 (Mo. App.1978) stated, "[i]t will suffice if the behavior of one spouse, combined with the attitude and behavior of the other, indicates

1. All statutory references are to RSMo, Cum. Supp. 1975 unless otherwise noted.

a reasonable likelihood the marriage cannot be [saved]." The evidence produced in this case warranted the trial court's findings that the marriage was irretrievably broken and could not be saved.

The wife testified that because the husband worked long hours in their Volkswagen repair business, as well as at his regular job, there was little companionship in the marriage. The husband required their three boys to work until 11:00 p. m. up to seven nights a week at the repair shop. She also testified the husband cursed her in front of the children and in front of customers at the shop and frequently used vulgar language around her and the children. The wife further testified the husband tried to convince her to become a prostitute and asked her to persuade her female friends to have sexual relations with him. Lending some credence to these last two allegations is the fact that the wife took a job at a massage parlor, at the husband's suggestion, after he visited one and discovered how much money the masseuses made. The wife also stated the husband repeatedly threatened to harm her, or kill her, if she kept any of his books, or obtained custody of their children.[2] Some of these allegations were not pled by the wife, but the husband failed to object that they were beyond the scope of the pleadings. "Under our procedure, issues not raised in the pleadings may be tried by consent of the parties and where so tried, they are treated as if they had been pleaded." *In re Marriage of Uhls*, 549 S.W.2d 107, 110 (Mo.App.1977).

The husband, of course, denied and contradicted much of the wife's testimony. Rule 73.01(3), however, requires an appellate court to defer to the trial court on the credibility of witnesses. *LoPiccolo v. LoPiccolo*, 547 S.W.2d 501 (Mo.App.1977). "We have before us only the printed record of the parties' words; in contrast, the trial court heard and saw the parties and could interpret the evidence in all its shades of meanings and assess the vital factor of

their attitude toward each other." *Gummels, supra*, 443. There is substantial evidence in the record of a "deteriorating relationship" and "waning of their affections." *Gummels, supra*, 443. This evidence had a direct bearing on whether the wife could reasonably be expected to continue to live with her husband.

Mindful of the warning of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), there is no firm conviction that the trial court's finding of irretrievable breakdown is against the weight of the evidence. On the record before it, the trial court properly found irretrievable breakdown based on § 452.320.2(1)(b). The *Uhls* case, *supra*, and *In re Marriage of Capstick*, 547 S.W.2d 522 (Mo.App.1977) cited by the husband, are distinguishable.

■■ Nor did the trial court err in converting the decree of legal separation into a decree of dissolution of marriage. Section 452.360.3 provides that: "No earlier than ninety days after entry of a decree of legal separation, on motion of either party, the court *may* convert the decree of legal separation to a decree of dissolution of marriage. [Emphasis added]." In *McRoberts, supra*, at page 684, the court categorized the ninety-day waiting period as a " 'cooling off' period" for the parties. If the trial court is convinced, after that period has elapsed, that the marriage cannot be saved, it has the authority, at a party's request, to enter the decree of dissolution. The legislature's choice of the word "may" clearly commits this decision to the sound discretion of the trial court. See *Bloom v. Missouri Board for Architects, P.E. & L.S.*, 474 S.W.2d 861, 864 (Mo.App.1971). No abuse of that discretion has been shown, considering the evidence of the parties' actions and attitudes before and after the decree of legal separation.

The husband next argues the trial court erred in admitting into evidence, over his objections, a child custody report and the investigator's testimony based on her report and investigation. Section 452.390.1 pro-

---

**2.** These threats apparently were made after the parties separated but certainly reflect the general deterioration of the marriage and the prospects of reconciliation.

vides "[t]he court may order an investigation and report concerning custodial arrangements for the child." Such a report was prepared in this case.

█ Section 452.390.1, by authorizing custody reports, does not make admissible that which would otherwise be inadmissible. The encyclopedias[3] and the case law[4] are in accord that the admissibility of a report and the testimony of an investigator in a child custody proceeding presumes that the ordinary rules of evidence have been met.

█ The husband was correct in his contention that portions of the report and testimony were hearsay, without proper foundation and based on outdated information. However, he has failed to raise any point which directly challenges the custody award; his brief does not claim error in the trial court's grant of custody to the wife. Thus, even if the challenged evidence was improperly admitted, the husband has failed, by not raising the custody award as a point of error, to show that he was prejudiced by its admission.

The husband's third argument is that the trial court erred in failing to issue a writ of body attachment to compel the attendance of two subpoenaed witnesses. Also raised with this point is the trial court's refusal to allow him to cross-examine the child-custody worker about an alleged statement by the wife regarding improper sexual conduct.

Trial commenced with proceedings in the court's chambers. After custody preferences from the children had been heard, the husband's counsel informed the court that two of his witnesses had told him they would not appear in response to their subpoenas. Counsel requested issuance of a writ of body attachment to secure their attendance, or a continuance or a stipulation as to their testimony on the basis of his affidavit. The wife's counsel declined to stipulate until he had consulted with her.

The court then read a portion of the affidavit setting out an incident which might be interpreted as showing the wife and a Mr. B. had spent the night together. The court suggested, since the trial was certain to continue into the next day, that the husband's counsel threaten the recalcitrant witnesses with the writ of attachment and arrest by the sheriff to persuade them to appear. Counsel agreed to pursue that course.

The next morning counsel informed the court the subpoenaed witnesses still refused to appear. He again requested issuance of the writ or a continuance. The wife's counsel stated he would discuss stipulation with her and the court reserved ruling until they had conferred. At the close of all the evidence, the wife's counsel indicated she would agree to a very limited stipulation. The husband's counsel again requested the writ, but the court reserved its ruling. One week after the close of all the evidence the motion was overruled.

Section 491.150, RSMo 1969 provides, "A person summoned as a witness in a cause pending in any court of record, and failing to attend, *may be compelled*, by a writ of attachment against his body, to appear . . . . [Emphasis added]."

█ The normal rules of statutory interpretation and construction indicate that by using the words "may be compelled" instead of "shall be compelled," the legislature intended to leave the decision of when to issue the writ in the sound discretion of the trial court. *Bloom, supra*, 864. Review of the propriety of that decision, therefore, is under an abuse of discretion standard. Abuse of discretion is defined as: " 'a judicial act which is untenable and clearly against reason and which works an injustice.' *State v. Stubenrouch*, 499 S.W.2d 824, 826 (Mo.App.1973)." *State v. Letourneau*, 515 S.W.2d 838, 844 (Mo.App.1974).

---

**3.** Annot., 59 A.L.R.3d 1337, 1340, § 2(a); 24 Am.Jur.2d Divorce and Separation § 793; 29 Am.Jur.2d Evidence § 495.

**4.** *Flickinger v. Flickinger*, 494 S.W.2d 388 (Mo. App.1973); *H__B__ v. R__B__*, 449 S.W.2d 890 (Mo.App.1970); *Benjamin v. Benjamin*, 370 S.W.2d 639 (Mo.App.1963).

■ Missouri civil cases do not set out any factors guiding the trial court in its exercise of discretion in this issue. Cases from other jurisdictions and the encyclopedias were consulted in an effort to determine under what circumstances a refusal to issue the writ would amount to an abuse of discretion. Only the most general guidelines were found. After considering these authorities and the purpose of the writ, the following factors seem relevant to the court's decision: (1) the number of times or length of time the case has been continued, and the desirability of deciding the case without further delay; (2) the likelihood that attachment by the sheriff will be successful; (3) the competency, relevancy and materiality of the evidence to be produced; (4) whether the case can be fairly and adequately decided without the evidence the missing witnesses would produce, including whether the evidence would be merely cumulative; and (5) the diligence of the efforts made by counsel to secure attendance without the writ.

■ Applying these guidelines to the facts here, the trial court did not abuse its discretion in declining to issue the writ of body attachment. The case had been continued for over one year and final resolution of a dissolution action, and its attendant issues of custody, support, maintenance and division of property, was an important goal to be furthered. Second, at the close of all the evidence, the husband's counsel indicated, "as of yesterday we felt it was futile for the Sheriff to go out and look for them because I was told directly that they wouldn't be there to be picked up." Third, even if the evidence to be produced might have raised a legitimate inference of marital misconduct, such an incident may not be relied upon to punish the spouse through denial of custody. See *In re Marriage of Carmack*, 550 S.W.2d 815 (Mo.App. 1977); *In re Marriage of C___ S___ B___*, 546 S.W.2d 186 (Mo.App.1976). Finally, the case could be decided without this evidence. The child-custody worker testified on cross-examination that the wife told her she had "dated" Mr. B. The wife denied ever dating Mr. B. Thus, both the type of evidence and the impeaching effect the husband sought to raise by introduction of the testimony of the missing witnesses was provided by the custody worker. No abuse of discretion has been shown; denial of the writ was not an untenable act, clearly against reason, and did not work an injustice. *Letourneau, supra.*

On recross-examination of the child-custody worker the husband's counsel sought to ask her: "Did you tell me or do you recall specifically whether Mrs. [A.] told you that as a part of her job at Palacia she gave Mr. [B.] sexual massages while she was in the ·nude?" An objection on the grounds of relevancy and hearsay was made. The trial court did not state its reasons for sustaining the objection. An offer of proof was then made that the custody worker would have answered that the wife had made such a statement.

At trial the wife admitted she had given Mr. B. massages at the Palacia massage parlor. However, she specifically denied the massage involved sexual stimulation or that she performed them in the nude.

■ " '[P]rejudicial error' or 'reversible error' in the admission or rejection of evidence is not an issue on an appeal in a case tried before the court." *Layman v. Southwestern Bell Tel. Co.*, 554 S.W.2d 477, 480 (Mo.App.1977). The issues, instead, are: (1) whether the evidence should have been admitted or rejected, and (2) what the judgment of this court should be based upon a consideration of the competent, admissible evidence. *Layman*, id., 480.

■ When hearsay evidence constitutes an admission against the party's interest, the evidence becomes admissible as an exception to the hearsay rule. *State ex rel. State Highway Com'n of Mo. v. Kimmell*, 435 S.W.2d 354 (Mo.1968); *Bridgeforth v. Proffitt*, 490 S.W.2d 416 (Mo.App.1973); *Rutledge v. Ballance*, 375 S.W.2d 214 (Mo. App.1964). Of course, to be admissible an admission must also be relevant to and have a material bearing on the issues of the case. *Rutledge, supra*; 31A C.J.S. Evidence § 276.

■ The wife's objection should have been overruled and the testimony should have been admitted. The testimony was relevant to the issues of maintenance and custody and constituted an admission against interest. However, the improper exclusion of this testimony does not compel the conclusion that a different result on custody and maintenance should be reached by this court after considering all the competent and admissible evidence.

■ A number of cases hold that sexual misconduct by a spouse does not mark him or her as an unfit custodian for children, especially where the conduct does not occur in the presence of the children. See *In re Marriage of C__S__B__, supra; In re Marriage of B__A__S__,* 541 S.W.2d 762 (Mo. App.1976); *In re Marriage of L__M__,* 541 S.W.2d 760 (Mo.App.1976). Further, the wife's misconduct here was not sufficient grounds to deny her maintenance as punishment because "neither party was exemplary in their conduct." *In re Marriage of Carmack, supra,* 820.

The wife's testimony, if believed, was that she took the job at Palacia massage parlor at her husband's suggestion after he learned, from visiting the establishment, the amounts earned by the masseuses. The husband apparently frequented Palacia himself, for the wife so testified and Mr. B. testified he first met the husband there after the wife had given him a massage. In any event, the wife readily admitted her employment at Palacia and candidly revealed that she had given sexual massages. With such evidence already in the record, it is doubtful either this court or the trial court would reach a different result with the inclusion of this single item of testimony. The error committed in rejecting this testimony was harmless. *Layman, supra,* 480.

The husband's fourth point of error challenges the maintenance award, the division of marital property and the award of attorneys' fees. He first argues the trial court failed to consider "relevant testimony" which would have resulted in lesser awards of marital property and attorneys' fees and

precluded a maintenance award. The "relevant testimony" refers to the two missing subpoenaed witnesses and the question on cross-examination just discussed. The foregoing analysis and authorities refute this argument. The husband also has not cited any cases, nor has research disclosed any authority, holding the award of attorneys' fees is dependent on marital conduct.

The husband's second argument under this fourth point of error is that his wife failed to show she was unable to support herself through appropriate employment and, therefore, was not entitled to maintenance.

■ Where the ages of the children awarded to the custody of the spouse seeking maintenance are not such that he or she must stay in the home to provide care, maintenance should only be awarded where the spouse: (1) lacks sufficient property, including marital property to provide for his or her reasonable needs and (2) is unable to support himself or herself through appropriate employment. § 452.335.1(1) and (2); *In re Marriage of Neubern,* 535 S.W.2d 499 (Mo.App.1976).

■ The wife received unspecified items of personal property, a set of World Books and $750 as her share of the marital property. She has no separate property of substantial value, and although she received custody of the two younger children, there was no family home to award to her. Clearly, she did not receive sufficient property to provide for her reasonable needs.

The wife was 33 at the time of trial. She had worked regularly during the marriage and possessed bookkeeping skills and experience. Her last job, which she had been forced to quit the week before trial when her employer discovered she was looking for other employment, had grossed $140 a week. Considering this as evidence of her earning power and appropriate employment, her claimed expenses (with two children) of $915 per month far exceeded her likely income. If a spouse's assets and earnings from appropriate employment are not sufficient to meet his or her reasonable

needs, an award of maintenance is authorized under § 452.335.1.

The husband's third argument is that the trial court erred in dividing the marital property because it failed to divide the parties' debts. Section 452.330 does not contain any language requiring division of marital debts. The husband cites no cases as authority for the proposition that allocation or division of debts is mandatory. In *B.W. v. F.E.W.*, 562 S.W.2d 137, 140 (Mo. App.1978) this court held that "[t]here is no requirement that the court 'dispose' of an encumbrance on real property." The same rule should apply here.[5]

As part of this third argument the husband draws the court's attention to the amounts of the awards of maintenance, support and attorneys' fees, claiming they exceed his resources and ability to pay.

A detailed discussion of the parties' financial situation in terms of the statute's provisions would have little precedential value. Simply, the husband's gross income was over $17,000 in 1976; the wife's was less than $6,800. She claimed monthly expenses of $915 for herself and two children. The husband claimed $775 monthly expenses for himself, alone. Both parties will have to adjust their budgets in light of their altered incomes and obligations. The trial court did attempt to ease the strain on the husband and strike a just balance between his ability to pay and the wife's reasonable needs by establishing cut-off dates for the maintenance award and by providing for installment payments on the maintenance award and property division. No abuse of the court's considerable discretion in setting these awards has been shown.

In his fourth argument in this fourth point of error the husband raises the issue that amounts awarded are incapable of precise determination, in that: (1) the court failed to set terms of payment for the wife's attorneys' fees; (2) the child support

award, which is to abate during the husband's six week temporary custody each summer, does not indicate if it will abate if custody is not transferred; and (3) the maintenance award contingent on the number of hours the wife works each week does not indicate if it is pro rata.

Nothing in the Dissolution Act requires the court to include a schedule of payment or the terms of payment of attorneys' fees in its decree. As to the child support award, it is, upon proper notice, "to abate during six week temporary custody of Respondent [the husband]." Clearly, it would abate.

The maintenance award of $25 per week contingent upon the wife working less than 30 hours a week must be deleted. Such an arrangement requires the court to become a timekeeper, checking weekly on the number of hours the wife has actually worked. The award does not allow either party to budget their funds to meet anticipated expenses in terms of known income. It is open to fraud and confusion and would certainly continually entangle the court with the parties and the parties with each other.

Further, this provision of the decree is too indefinite and uncertain to be capable of enforcement by the wife. See *Loomstein v. Mercantile Trust National Ass'n*, 507 S.W.2d 669 (Mo.App.1974); *Taylor v. Taylor*, 367 S.W.2d 58 (Mo.App.1963). Both of these cases hold that if a term of the judgment cannot be ascertained without resort to external proof through information or documents beyond the record it is void, unenforceable and beyond the authority of the court. See *Ferriss v. Ferriss*, 477 S.W.2d 745 (Mo.App.1972).

To avoid further delay in the final disposition of this case, the authority granted this court under Rule 84.14 will be exercised to strike this portion of the decree. All other maintenance, custody, support and attorneys' fees awards are affirmed.

---

**5.** See *Jankowski v. Jankowski*, 561 P.2d 327 (Ariz.App.1977) where it was held the Uniform Divorce Act contained no provision mandating an express allocation of debts. It is not clear what effect Arizona's community property rules had on this decision.

Finally, as his fifth point of error, the husband claims the trial court erred in denying his request for separate maintenance. As his first argument in support of reversal or transfer to the supreme court, he contends the separate maintenance statute, § 452.130, contains a sexual exclusion which unconstitutionally denies a husband the right to separate maintenance. This issue has not been preserved for review. At no point in his pleadings, or at trial or in his motion to amend judgment (which served as the motion for new trial) did the husband raise the issue for the trial court's consideration. The procedural requirements for raising constitutional issues were set out in *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372, 376 (Mo. banc 1949) and have since been strictly applied. See *In re Marriage of Harkins*, 548 S.W.2d 583 (Mo.App.1977); *Oliver v. City of Higginsville*, 527 S.W.2d 690 (Mo.App.1975); *Allright Grand, Inc. v. Kansas City*, 515 S.W.2d 890 (Mo.App.1974). The mere assertion of a claim for separate maintenance did not adequately raise the issue at the first available opportunity.

In the alternative, the husband suggests the separate maintenance statute be construed in light of the sexual neutrality of the remaining sections of the Dissolution Act. This interpretation would require replacing the legislature's chosen words—husband and wife—with the sexually neutral word "spouse." This request is more appropriately addressed to the legislature; the invitation to redraft the statute is declined.

The judgment is modified and, as modified, affirmed. The cause is remanded to the circuit court with instructions to enter judgment in accordance with the modification, striking the award of $25 per week maintenance contingent upon the wife's working 30 hours or less each week.

CRIST and SMITH, JJ., concur.