In re the MARRIAGE of K.B. and R.B.

K.B., Petitioner-Respondent,

and

R.B., Respondent-Appellant.

No. 12743.

Missouri Court of Appeals, Southern District, Division One.

Feb. 18, 1983.

Motion for Rehearing or to Transfer to Supreme Court Denied March 11, 1983.

Application to Transfer Denied April 26, 1983.

Donald E. Bonacker, Bonacker & Reynolds P.C., Springfield, for petitioner-respondent.

William H. McDonald, John E. Price, Robert M.N. Palmer, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for respondent-appellant.

TITUS, Judge.

K.B., the wife (petitioner), and R.B., the husband (respondent), were married in Kansas in February 1962. Petitioner and respondent are both forty-four years old, and have lived in Springfield since 1970. Three children were born of the marriage: the oldest, age twenty, is now a college student, while the other two, ages eighteen and fifteen, are completing high school. All are in good physical and mental condition.

Both petitioner and respondent are well educated: petitioner became a licensed dental hygienist just prior to the marriage, and respondent became a licensed dentist approximately two years later. Both were employed in their respective fields from the time of the marriage until September 1962, when petitioner quit her job due to their first child being born. Petitioner has worked very little since that time, and the jobs she has had were, for the most part, in areas other than her field of training. However, she has been active in various civic and church groups, and considers herself to be currently employable as a dental hygienist. Respondent has worked steadily in the dentistry field since his graduation from college, gradually building up a private practice.

The petition for dissolution of marriage was filed in March 1981 at which time petitioner and respondent owned a home in Springfield worth approximately $75,000. They had also accumulated interests in numerous businesses, most of which were designed to assist respondent in the advancement of his career. Three of those interests were partnerships with other Springfield dentists: a dental group, which manages the administrative services of a number of dentists, a dental laboratory, which manufactures such items as bridges and crowns used by the dentists, and the dental properties which consists of the land and building where respondent practices. Their interest in each is: the dental group, one-seventh (undisputed value of $3,779), the dental laboratory, one-sixth (undisputed value of $1,169), and the dental properties, one-seventh (disputed value). The disputed value of the dental properties occurred due to different methods of valuation. Petitioner used the raw book value of $53,816, while respondent used the salable value of $10,500 due to restrictive covenants placed on each partner's ability to sell. The trial court found that since respondent had no plans to ever leave the partnership, and since case law requires a "just" valuation, the correct value was $42,500, representing the book value minus an amount for the limitation on disposal.

One other business interest was respondent's incorporated dental practice entitled in his name. Respondent owned all the outstanding shares, the value of which were also disputed. Petitioner claimed the corporation was worth $53,100, but respondent

contended that should he sell the corporation, it would not be worth that much. Respondent thus argued $31,900 was the correct valuation. But the court, again finding no evidence that respondent ever planned to sell the corporation, placed the value at $53,100.

On November 18, 1981, the lower court entered an order setting the rights of petitioner and respondent following the dissolution. Petitioner was awarded custody of the children, $300 per month per child as child support, $500 per month maintenance for six months, $300 per month maintenance after six months, the house (worth approximately $43,000 with the amount due on the loan), and various items of personal property. Respondent received visitation privileges with the children, all the business interests and dental equipment, a retirement account, and the personal property in his possession. In addition, respondent was ordered to pay the outstanding bills of the marriage and keep the family's insurance policies in effect. Finally, after finding that the marital property awarded to respondent was worth $53,018 more than that awarded to petitioner, the court split the difference and ordered respondent to pay petitioner $26,509 in six yearly installments, plus interest.

Respondent filed notice of appeal after attempts to set aside and modify the decree were denied.

Respondent's first point relied on claims that the trial court erroneously applied § 452.330.1[1] when, in dividing the marital property, it failed to specify the exact interest of the party receiving the property. The argument is directed toward the decree issued by the trial court on March 25, 1982, which ordered respondent to pay $26,509 to petitioner as a property settlement. That decree stated, in part: "This Court shall continue its jurisdiction over the property hereinafter set over to Respondent and Petitioner shall continue to have an interest in such property until the full said sum is paid

and all other obligations of Respondent to pay debts and attorney fees hereinafter ordered are kept. In the event Respondent shall fail to pay the said sums in full when due, the Court will Order the property hereinafter distributed to Respondent to be sold and the first proceeds, after payment of expenses of sale, shall be distributed to satisfy in full the sums owing by Respondent hereunder, and the balance shall be distributed to Respondent." Since the decree allows the trial court to later order the sale of respondent's property, he argues that the decree will "almost certainly require further modifications," and thus violates the requirement of "a complete severance of all unity of possession . . . between the spouses." *Corder v. Corder,* 546 S.W.2d 798, 805[10] (Mo.App.1977).

■ We do not agree. It is clear that the lower court has ordered a distinct division of the marital property between petitioner and respondent. In fact, respondent's attorney admitted as much when he said: "I'm not saying that the Court has not made a distribution." And it is equally clear that "modification," meaning "sale," will be required only if respondent fails to abide by the order of the court. Here the trial court has divested itself of any further dealings with the property, unlike the cases cited by respondent where the occurrence of a contingency may create a new interest of one spouse in the marital property of another spouse. See *In re Marriage of Gehret,* 41 Colo.App. 162, 580 P.2d 1275 (1978). The marital property distributed to respondent cannot be taken from him and given to petitioner, it can merely be sold to satisfy the debt that he owes. There has therefore been a valid final distribution and severance of all marital property since "the power given the trial court by § 452.330 (par. 1) to 'divide the marital property' includes the powers necessary to render effective the power to divide." *In re Marriage of Kueber,* 599 S.W.2d 259, 261[1] (Mo.App.1980).

**1.** Statutory references are to RSMo 1978. Rule references are to Missouri Rules of Court, V.A.

M.R.

■ Neither is the trial court's order vague or incapable of enforcement by the parties. All property has been distributed; respondent is in debt to petitioner; if that debt is not paid respondent's property will be sold to satisfy it. Again, the respondent's interest in his specific items of property would not be shifted to the petitioner, but rather, his interest would merely be sold to satisfy his debt. The trial court's power to carry out a division of marital property is "virtually unlimited so long as it effects a division contemplated and mandated by Section 452.330." *Corder v. Corder,* supra, 546 S.W.2d at 806[13]. Respondent's first point is denied.

■ Respondent's second point attacks the decision of the lower court to award maintenance to petitioner. The award was erroneous, he asserts, as there is no substantial evidence that petitioner is unable to support herself through appropriate employment and because respondent does not have sufficient resources to pay maintenance. Respondent's argument is based on § 452.335.1, which states that maintenance shall be granted only if the spouse seeking maintenance: "(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." Respondent correctly states that both requirements must be met in order to be awarded maintenance. No argument is made that the first requirement has not been met, and no argument is made that any child requires petitioner to stay at home. The argument therefore centers around whether petitioner is able to support herself through appropriate employment.

■ Respondent asseverates that since the evidence shows petitioner is capable of obtaining a job in her field of training she has not met the second requirement and thus should not be awarded maintenance. But the law governing the awarding of maintenance is not so strict as to deny maintenance anytime a spouse may be able to simply "support himself." The statute's intent is to require more than that simple support be achieved, for § 452.335.1 requires that in deciding whether or not to award maintenance the spouse's "reasonable needs" must be examined. If a spouse's assets and earnings from appropriate employment are not sufficient to meet his or her reasonable needs, an award of maintenance is authorized under § 452.335.1. *J.A.A. v. A.D.A.,* 581 S.W.2d 889, 897–898 (Mo.App.1979). Otherwise, a spouse who is "able to support himself" could be suffering a significant drop in standard of living.

■ It is therefore a question of what was meant by the term "reasonable needs." In a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs. *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 857 (Mo.App.1977). In this case petitioner has foregone, for over twenty years, the right to develop her career. She has foregone the ability to advance economically, having instead made a home for respondent, raised their children, and participated in community activities—all designed to allow the respondent to devote his full potential to the earning of income. Petitioner and respondent, working together, developed a fairly high standard of living. While the petitioner has lost the advancements and increases that she could have expected over the twenty year period of marriage, respondent has been advancing in his profession, establishing economic protection for the future. There is substantial evidence to justify an award of maintenance since a denial of maintenance could cause petitioner to suffer a significant decrease in her standard of living, whereas respondent would continue earning at the level petitioner helped him achieve.

■ Once it has been established that the reasonable needs of a spouse requires that maintenance be granted, it is then necessary to determine the amount to be granted by using the factors in § 452.335.2.

We are governed, in reviewing the lower court's award of maintenance, by the standards set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Therefore, we must sustain the ruling of the lower court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. It is well known that the trial court is accorded broad discretion in its orders granting maintenance, such that we will not interfere unless an abuse of discretion appears. *In re Marriage of Galloway,* 547 S.W.2d 193, 195 (Mo.App.1977). And the burden of proving there was error in the trial court's judgment is upon the respondent-appellant. *Naeger v. Naeger,* 542 S.W.2d 344, 346 (Mo. App.1976). So we are compelled to give deference to the trial court, who has seen and heard the parties and their evidence, and thus made judgments of credibility. *In re Marriage of Brewer,* 592 S.W.2d 529, 532 (Mo.App.1979); Rule 73.01(c)(2).

In this case respondent charges the trial court's award of maintenance to petitioner erroneously declared and applied the law in failing to consider tax consequences, and erroneously violated the requirement that substantial evidence support the award. Specifically, respondent states that the tax shelters built by petitioner and respondent have been exhausted, so that petitioner has received their benefit in the past whereas respondent, alone, must suffer the detriment of no longer having depreciable assets to offset his income. He states that the failure of the court to consider such factors leaves respondent to carry the "adverse financial consequences" on his own.

The trial court heard testimony on this point from witnesses called by both sides. The testimony was complex and often contradictory. It was filled with assumptions, predictions, "paper income", which is or is not income, and "adverse conditions", which may or may not occur. The court then made the finding that the testimony as to tax shelters, and any possible conclusions from it, were too "speculative" to make any concrete findings upon them.

A finding that the testimony on a particular subject is too speculative to draw any firm conclusions from it does not constitute "failing to consider" the evidence. It is not infrequent that a trial court weighs the evidence before it and decides that its credibility is not high enough to grant it much weight. "Weight of the evidence" means its weight in probative value, not the quantity or amount thereof, and it is not determined by mathematics, but depends on its effect in inducing belief. *In re Marriage of Davault,* 636 S.W.2d 422, 424[10] (Mo.App.1982). The trial court was in the position to evaluate the evidence, and we are not now able to say there was an abuse of discretion.

Similarly, respondent's claim that he does not have sufficient income to meet the court's decree deals with the weight given to certain predictions and possibilities that may or may not occur in the future. Again there was testimony on all sides— contradicting, predicting and supposing. We cannot say that respondent has met his burden of proving the judgment below was in error. Respondent's second point is denied.

Respondent submits in his third point that the lower court's values placed on the dental properties and his professional corporation are erroneous in that the greater weight of the evidence is on his position whereas there is no substantial evidence for petitioner's position. Again the lower court was faced with making a decision as to a question of fact. Different methods of valuation were used by each side, so that where one side relied on book value, the other side looked more to market value. There was evidence of a decrease in net worth due to limitations upon disposal of the properties, a fact used by the court in its decree to decrease the properties' value, just as respondent suggested should be done. And there was a significant amount of controversy over whether the court should acknowledge the impact of appreciation, depreciation, full book value, accounts receivable, bad debts, appraisals, net assets, partnership agreements, and a host of other

factors. In light of the above we cannot say that there was no substantial evidence in favor of the court's valuation, or, therefore, that the greater weight of the evidence was in favor of respondent. Respondent's third point is denied as per *Murphy v. Carron,* supra, 536 S.W.2d at 32.

Respondent's final point claims that since the trial court failed to follow the requirements for awarding maintenance as laid out in § 452.335, respondent has been deprived of due process of law under the Fifth and Fourteenth amendments to the United States Constitution. Our discussion has shown that the trial court did not violate § 452.335 and thus respondent could not have been deprived of due process of law on those grounds.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.