**In re the Marriage of Virginia Marie PROBSTEIN a/k/a Sally Probstein, Respondent/Cross–Appellant,**

v.

**Norman Koplar PROBSTEIN, Appellant/Cross–Respondent.**

No. 53944.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 15, 1989.

Application to Transfer Denied
April 18, 1989.

**72**

Schechter & Watkins, P.C., Theodore S. Schecter, Bruce E. Friedman, St. Louis, for appellant/cross-respondent.

Lashley, Baer & Hamel, Edward D. Weakley, St. Louis, for respondent/cross-appellant.

KAROHL, Judge.

Virginia Marie Probstein and Norman Koplar Probstein were married on July 4, 1960. They separated on October 8, 1982. During the marriage they adopted and raised two children, twins born May 19, 1965. The children were college students at the time of the dissolution. The court found them to be emancipated. After a contested hearing on cross petitions for dissolution filed by the parties, the court entered a degree of dissolution on September 3, 1987. The court amended the decree on October 22, 1987. Both parties appeal from some of the provisions of the decree.

Husband appeals claiming the court erred in: (1) finding 241,510 shares of Madesco Investment Company to be marital property and in awarding one half of the shares to wife; (2) awarding wife maintenance in the amount of $3,000 per month; and, (3) awarding attorney's fees for wife's attorney. Wife appeals claiming the court erred in: (1) not disposing of a marital asset, a promissory note of husband's sister in the amount of $99,034; and, (2) finding one half of the shares of Harnat Motel Corporation, a Missouri corporation, were the separate property of husband and awarding them on that basis to husband when those shares were marital property.

At the time of the trial husband was sixty-seven and wife fifty-six years old. The evidence was presented to the court during a four day hearing. Some matters were presented by agreement in the form of stipulations. For example, the parties stipulated that property found to be marital property should be divided one half to each party and distributed in kind where possible, except that if husband's interest in Harnat Motel Corporation was found to be marital property, husband would not agree to such a division. The court found Harnat Motel Corporation to be husband's separate property. The court found conduct of the parties during the marriage was not alleged or proven by either party to be a factor to be considered.

### Husband's Appeal

Husband claims the court erred in finding 241,510 shares of Madesco Investment Corporation (hereinafter Madesco) were marital property and in awarding wife one half thereof. He claims his unrefuted evidence was that this stock was his separate property because these shares were issued to husband in exchange for cash previously advanced from Boulevard Investment Company (hereinafter Boulevard) to Madesco. Thereafter, Boulevard stock was exchanged for other shares in Madesco in 1965. The parties stipulated that husband owned his shares in Boulevard before marriage. Boulevard was formed in 1956, prior to the marriage in 1960. Husband claimed 487,710 shares of Madesco. The parties stipulated that 246,200 shares in Madesco were husband's separate property because they were received in exchange for husband's stock in Boulevard, which was acquired before marriage. Husband testified that before the Boulevard stock was exchanged for Madesco stock and before the merger of Boulevard into Madesco— Boulevard advanced money to Madesco. The disputed shares, husband claimed, were to compensate husband for those advances. Husband testified he never invested any personal funds into Madesco after the marriage of the parties. He also explained that the original assets of Madesco, incorporated after the marriage, came from assets of Boulevard.

The disputed shares, 241,510 shares, were issued by Madesco to husband at various times and in various amounts. On July 26, 1961, he received 176 shares. On August 1, 1961, he received 223 shares. On April 20, 1962, he received 38,610 shares. On June 8, 1962, he received 31,200 shares. On June 8, 1962, four certificates, totaling 70,200 shares, were exchanged for a single certificate. On March 9, 1964, husband received 131,310 shares. Finally, on April 24, 1964, husband was issued 40,000 shares.

Wife answers that these shares, acquired subsequent to the marriage, are presumed to be marital. Section 452.330.3 RSMo 1986. She responds to husband's claim of error that the presumption has not been rebutted. Husband relies on the provisions of § 452.330.2 RSMo 1986, which defines marital property and excepts therefrom property acquired in exchange for property acquired prior to the marriage. He supports this claim by the unrefuted testimony that he never paid any money for the 241,-510 shares.

█ We find no error in the finding of fact that 241,510 shares, acquired after the marriage and presumed to be marital, are marital property. Property acquired after marriage may be acquired without a payment of money and be marital property. The shares issued on various certificates after the marriage were issued by actions of the shareholders and directors of Madesco. The evidence does not compel a finding that the shares were issued in exchange for premarital separate property. They may have been compensation for services. Proof that they may be separate property does not overcome the presumption.

█ Husband's reliance on *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984) is misplaced because that case involved the division of admittedly marital property. The issue before the trial court in the present case was whether the property was marital or separate. Husband's testimony, even if fully believed and accepted by the trial court, did not conclusively establish that the disputed shares of Madesco were acquired in exchange for premarital proper-

ty. The undisputed shares of Madesco, 246,200 shares, were issued to husband in exchange for his premarital shares of Boulevard. The shares issued at various times after the marriage were not necessarily in exchange for husband's interest in Boulevard.

Even if no marital funds were invested into Madesco it may be that the shares were issued for services rendered after the marriage. The record does not rebut that possibility. Accordingly, the presumption of marital property has not been overcome by the testimony of husband or the records of the corporations which were exhibits. In 1960, Boulevard merged into Madesco and husband received 246,200 Madesco shares, stipulated to be his separate property and awarded to him as separate property. The subsequent stock issues totaling 241,510 shares were not shown, by undisputed evidence, to be traceable to Boulevard. We also note evidence that Madesco stock may be of little or no value. Point denied.

█ Husband contends wife was not entitled to periodic maintenance because the property award provisions of the decree vested her with sufficient property to provide for her needs and because she is able to support herself through appropriate employment. The court awarded wife statutory periodic maintenance of $3,000 per month which maintenance "shall terminate upon the death of either party or the remarriage of the [wife]." We find no error in the award of statutory periodic maintenance. The award was not an abuse of discretion in view of the evidence. *In re Marriage of K.B.*, 648 S.W.2d 201, 206 (Mo.App.1983).

During the period of the marriage, twenty-seven years, wife had some periodic employment but never earned a sufficient sum to support herself. The bulk of her earnings during the period of the marriage came from a corporation she incorporated. It purchased personal property at wholesale and sold to corporations in which husband had a substantial ownership interest. The company had earnings ranging from eight to twenty-four thousand dollars per

year. At the time of the hearing the company was inactive. In addition, wife had some part time jobs as a clerk and a model for nominal earnings. This evidence supports an implied finding that wife was not able to support herself by employment. This evidence did not require a finding that these income activities were done to earn income for support of self or family and demonstrated current ability to self support. The amount of the award is approximately the amount requested in her income and expense statement and testimony regarding need.

The court awarded husband assets valued at more than $2,500,000 and wife assets valued at just under $700,000. A substantial portion of the assets awarded to wife are non-income producing. She will realize a one half interest in the family home when sold, approximately $162,500. She will receive cash from husband and in bank accounts of about $170,000. When sold, another piece of real property in which the court granted a half interest to each party could develop $92,000 for wife. Other assets awarded to wife consist of household furnishings, an interest in husband's profit sharing plan, an IRA, a partnership interest and an interest in promissory notes. These assets may not have the assigned values. In any event they were not income producing at the time of the decree. More that half of the assets which may be invested for income will depend on sales of real estate and division of proceeds. The trial court was entitled to consider that some of the assets, when sold, will create a tax liability which will reduce the value of her award.

■ The evidence supports a finding of need for the amount awarded for a fifty-six year old wife who was not employed; whose principal activity for twenty-seven years of marriage was domestic; and, whose marketable skills were modest. Nor does the evidence compel a finding, measured by the standard of abuse of discretion, that wife has sufficient property to provide for her reasonable needs. The marriage was lengthy and the standard of living of the parties was high. These are relevant factors supporting the award. *In re Marriage of K.B.*, 648 S.W.2d at 205. Nor is wife required to consume marital property before she is entitled to maintenance. *Johnson v. Johnson*, 671 S.W.2d 426, 428 (Mo.App.1984). Further, some of the cash assets may become non-income producing if wife uses proceeds to acquire a home to replace the family residence which will be sold to generate some of the cash. The availability of investment income in sufficient amount is not so clear or so certain to find the award an abuse of discretion. Point denied.

■ The trial court awarded wife attorney's fees in the amount of $20,000. We find the award authorized by § 452.355 RSMo 1986 and the amount not an abuse of discretion. The amount is not inconsistent with the amount paid husband's attorney. The dissolution proceeding began by petition filed on October 27, 1982, and concluded by an extended hearing in April, 1987. Reasonableness of the award is not in dispute. Husband was awarded substantially more property than wife. His ability to pay is not in dispute. Obviously, wife will have sufficient cash assets to make the payment of fees. However, the dissolution statute does not foreclose an award of attorney's fees only on that account. A spouse is not required to forego a claim for attorney's fees merely because assets on hand are available to make payment. The court does not abuse its discretion to award attorney's fees merely because the spouse has sufficient funds, independently or by award, to pay attorney's fees. In addition to financial resources of the parties, the court was entitled to consider other factors. *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979). The award was within the limits of judicial discretion, considering all of the evidence, particularly that a substantial portion of the assets awarded to wife are non-income producing and the values recovered after sale and after taxes may not equal assigned valuations. Further, wife's needs in terms of liquid assets were not settled at the time of trial.

Finally, husband contends that if an award of maintenance was appropriate

then the amount of the award was excessive. For the reasons given we reject the claim.

### Wife's Appeal

Wife claims that the court erred in failing to dispose of an asset disclosed by husband on a property statement filed by him on March 23, 1983. The statement listed a promissory note due in 1990 from his sister. The assigned value was $99,034. Wife acknowledges there was no evidence at trial regarding this note. The court's decree does not in any way refer to it. In order to avoid a suit in equity to determine ownership of the omitted property she asks a remand for that purpose. Request denied.

Husband filed a subsequent property statement in April, 1987, which does not reflect the existence of any promissory note from his sister. There is no evidence regarding the existence of such note at the time of trial. The disposition of the note between 1983 and 1987 was not a matter of evidence and not an issue in dispute. Further, husband was asked, on cross examination, if he had any assets not listed on his amended statement of property and he answered in the negative.

Wife's second and last claim of error is the court erred in finding 21,640 shares of Harnat Motel Corporation were husband's separate property. The background facts are that the parties stipulated Harnat of Colorado was incorporated on July 7, 1958. Husband testified he owned 17,300 shares before marriage and acquired 4,100 shares by trading premarital assets to his sister for these shares. The original corporation was a Colorado corporation. After sale of the Colorado asset owned by the corporation, a decision was made to merge Harnat of Colorado with an existing Missouri corporation which had no assets or liabilities. This was done in December, 1982. The surviving Missouri corporation thereafter changed its name to Harnat Motel Corporation. Husband testified that all the assets and liabilities of Harnat of Colorado went into the Missouri corporation and that he never personally invested any money into the Missouri Corporation.

The important testimony on this issue came from the attorney who represented the corporations, or husband, or both. He explained to the court that the Articles of Merger erroneously indicated the Missouri Corporation voted 100 common shares and Harnat of Colorado voted 100 shares. He testified the figures should have been "100%" of common shares instead of "100" common shares, such that all of the shares of both entities voted for the merger [and husband owned all of them]. Eventually, husband became the owner of 200 shares and wife claims that 100 of those shares must have been acquired during the marriage and are marital property. This is an argument similar to wife's claim to Madesco shares, but the result is not the same.

The testimony of husband and the attorney, if believed, supports a finding husband's 200 shares in the existing Missouri Corporation, Harnat Motel Corporation, was entirely an exchange transaction for his premarital stock in the Harnat of Colorado corporation. His stock in the Colorado corporation was separate and the evidence supports the award of all Harnat stock to husband. The typographical error was explained by the testimony of husband and attorney. Credibility was for the trial court. It was free to accept or reject the testimony. *Trunko v. Trunko,* 642 S.W.2d 673, 674–675 (Mo.App.1982). The court evidently believed the testimony. We find no error. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

We affirm the decree in all respects.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.