Barbara L. WEISS, Respondent,

v.

Elmer Leroy WEISS, Appellant.

No. WD 36637.

Missouri Court of Appeals,
Western District,
Division 2.

Jan. 7, 1986.

Arthur H. Stoup, Shirley J. Swofford, Stoup & Thompson, Kansas City, for appellant.

Robert C. Paden, John W. Dennis, Jr., Paden, Welch, Martin, Albano & Graeff, P.C., Independence, for respondent.

BEFORE DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

PER CURIAM.

A long-standing marriage of thirty-six (36) years was terminated under a petition for dissolution filed by the wife. Decretal provisions for maintenance, division of marital property, and attorney fees and costs of litigation incurred by the wife, coupled with an absence of specific findings of fact and conclusions of law by the trial court, prompted an appeal by the husband. The wife cross-appealed on the singular ground that the trial court erred in awarding her only 38.4% of the husband's Federal Civil Service Retirement System benefits.

More specifically, the charges of error leveled by the husband against the trial court, the order of which have been rearranged to facilitate a more cohesive discussion and disposition, are as follows: (1) in rejecting the husband's request for findings of fact and conclusions of law pursuant to Rule 73.01(a)(2); (2) in awarding the wife 38.4% of the husband's monthly benefits under the Federal Civil Service Retirement System upon his retirement; (3) in ordering the husband to elect optional survivor annuity benefits under the Federal Civil Service Retirement System and to designate his wife as beneficiary thereof; (4) in treating and dividing as marital property certain mutual fund accounts standing in the joint names of the husband and wife because they had been purchased with funds inherited by the husband; (5) in valuing the marital home at Seventy Thousand Dollars ($70,000.00) and ordering the husband to pay the wife Thirty-five Thousand Dollars ($35,000.00) within six months after the decree became final to effect complete division of the marital property; (6) in awarding the wife maintenance in the amount of One Thousand Two Hundred Dollars ($1,200.00) per month until the date of the husband's retirement; and (7) in ordering the husband to pay Thirteen Thousand Six Hundred Seven Dollars and Seventy-Seven Cents ($13,607.77) to the wife for attorney fees and costs of litigation which she incurred. The single point raised by the wife's cross-appeal, supra, will be discussed and disposed of contemporaneously with points (2) and (3) raised by the husband.

Appellate review of the respective issues is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.App.1976): "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." Pertinent facts, consistent with the scope

of appellate review, will be interspersed, where deemed necessary and appropriate, throughout disposition of the various issues raised.

 Regarding the husband's first point, Rule 73.01(a)(2), insofar as here pertinent, provides as follows: "If any party so requests before final submission of the case, the court shall dictate to the court reporter, or prepare and file, a brief opinion containing a statement of the grounds for its decision and the method of determining any damages awarded; and may, or if requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel." The bifurcated nature of this portion of Rule 73.01(a)(2), supra, is readily apparent. The first aspect addresses requests for the grounds of a decision by the trial court, while the second addresses specific requests for findings of fact by the trial court on specified controverted fact issues. Counsel for the husband, before final submission of the case, made a *general request* for both a statement of the grounds of the trial court's ultimate decision and a finding of facts in support thereof which was denied by the trial court. Regarding the latter aspect of Rule 73.01(a)(2), supra, no controverted fact issues were specified in the general request. Failure to do so negated any duty on the part of the trial court to make specific findings of fact. *Dardick v. Dardick*, 670 S.W.2d 865, 867 (Mo. banc 1984); *In re Marriage of Burroughs*, 691 S.W.2d 470, 473 (Mo.App.1985); *Estate of Groves*, 684 S.W.2d 925, 929 (Mo.App.1985); *Snider v. Snider*, 570 S.W.2d 770, 774–75 (Mo.App.1978); and *First Florida Building, Inc. v. Safari Systems, Inc.*, 570 S.W.2d 728, 730 (Mo.App.1978). Regarding the first aspect of Rule 73.01(a)(2), supra, noncompliance by a trial court with a request for a statement of the grounds for its ultimate decision, although not condoned, does not ipso facto mandate reversal. Rule 73.01(a)(2), supra, as held in *Lo-*

*pez v. Vance*, 509 S.W.2d 197, 204 (Mo.App. 1974), is to be read in conjunction with Rule 84.13(b) which provides, inter alia, that "[n]o appellate court shall reverse any judgment, unless it finds that error was committed by the trial court against the appellant, materially affecting the merits of the action." By way of a caveat, no one should harbour the belief that Rule 84.-13(b), supra, automatically serves as an antidote for noncompliance with proper and timely requests pursuant to Rule 73.-01(a)(2), supra. Otherwise, guidance to counsel both below and for purposes of appellate review, would be effectively dissipated. This court, however, in view of the adequacy of the record on appeal and in order to avoid judicial delay, is constrained to hold that the trial court's failure to honor the husband's request for a statement of the grounds for its ultimate decision did not materially affect "the merits of the action." *Lopez v. Vance*, supra.

Under points (2) and (3) the husband challenges that portion of the decree awarding the wife 38.4% of his benefits under the Federal Civil Service Retirement System "if, as and when received", and ordering him to elect optional survivor annuity benefits and designate his wife as beneficiary. The husband's rights under the pension plan were fully vested and matured at the time of trial as he was 57 years of age and had 41 years creditable service with the U.S. Postal Service.[1] According to uncontradicted expert testimony, the present value of the husband's rights in the pension plan on an actuarial basis was $242,040.00. A portion of the husband's benefits under the pension plan, i.e., 12% thereof as determined by the trial court, was acquired by the husband before the marriage. After taking that factor into consideration, the trial court determined that 88% of the husband's vested and matured rights in the pension plan constituted marital property. The award of 38.4% of the husband's rights in the pension plan to the wife as her share thereof under the

---

1. According to the record, under the Federal Civil Service Retirement System an employee's benefits are fully vested and matured, and he has the option of retiring and drawing same, when he reaches 55 years of age and has 30 years of creditable service.

division of marital property was arrived at as follows. Under the Federal Civil Service Retirement System the husband had the option of electing a survivor annuity benefit whereby monthly benefits would be paid to his designated beneficiary after his death. The wife qualified under the Federal Civil Service Retirement System, even after dissolution of the marriage, as a beneficiary if so designated by the husband.[2] Absent such an election, all monthly benefits under the husband's pension plan terminated upon his death. Election by the husband of a survivor annuity benefit would reduce the amount of monthly benefits the husband would draw during his lifetime upon retirement regardless of any amount apportioned to the wife. The trial court in its decree ordered the husband to elect the survivor annuity benefit and designate the wife as beneficiary. The trial court reduced the wife's share of the husband's pension plan deemed to constitute marital property from 44% to 38.4% to offset the reduction in monthly benefits that would occur by reason of election of the survivor annuity benefit. By doing so, upon retirement the husband's apportioned share of monthly benefits during his life under the pension plan would equal the amount he would have otherwise drawn if no survivor annuity benefit had been elected.

Mathematically, the decree entered by the trial court allocating 38.4% of the husband's pension plan to the wife and 61.6% thereof to the husband, and directing the husband to elect the survivor annuity benefit and designate the wife as beneficiary, appears to have been arrived at as follows. Absent election of the survivor annuity benefit, benefits upon retirement under the pension plan would amount to $2,576.00 per month. Conversely, upon election of the survivor annuity benefit, benefits upon retirement under the pension plan would amount to $2,287.00 per month. As previously noted, due to the husband's participation in the pension plan prior to his marriage, the trial court determined that 88% thereof constituted marital property. Using 88% as a starting base, the trial court tentatively determined that the wife was entitled to 44% of the husband's pension plan upon division of the marital property and that the husband was entitled to 56% of said pension plan. The difference between $2,576.00 per month in benefits under the pension plan if no survivor annuity benefit was elected, and $2,287.00 per month in benefits if there was an election, is $289.00 per month. Consequently, the "cost" to the husband of being ordered to elect the survivor annuity benefit and to designate the wife as beneficiary was $289.00 per month. The trial court determined that the wife should bear the "cost" of the husband being ordered to elect the survivor annuity benefit and, accordingly, reduced the wife's share in the husband's pension plan to 38.4%, thus increasing the husband's share therein to 61.6%. The net result of doing so will give the husband $1,409.00 per month in retirement benefits under the pension plan, which is the same amount he would have received on a 44%–56% division of the pension plan as marital property if no survivor benefit annuity was elected. When viewed in the perspective heretofore set forth, the husband's contention that he was required to provide for his wife after his death is stripped of any practical efficacy.

The trial court's inclusion of 88% of the husband's pension plan as marital property subject to division under § 452.-330, RSMo Supp.1984, is authoritatively supported by 5 U.S.C.A. § 8345(j) (West 1980); *Kuchta v. Kuchta*, 636 S.W.2d 663 (Mo. banc 1982); and *Hagerman v. Hagerman*, 682 S.W.2d 28 (Mo.App.1984). Although appellate review thereof is governed by *Murphy v. Carron* supra, § 452.-330, supra, setting forth the guidelines to be followed in dividing marital property, vests the trial court with broad discretion and interference therewith at the appellate level should occur "only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of

---

**2.** 5 U.S.C.A. §§ 8331, et seq., and 50 FR 20070, 20072 (May 13, 1985).

judicial discretion." *Haun v. Haun*, 677 S.W.2d 927, 932 (Mo.App.1984). See also *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo. banc 1983).

*Kuchta v. Kuchta*, supra, reflects the rationale for treating spousal pension plans as marital property—rights are accrued therein over a protracted period of time, particularly apropos when a marriage of long duration is involved, and are frequently the most valuable marital asset. *Kuchta v. Kuchta*, supra, 636 S.W.2d at 664–65. Applicable to the facts of this case, "[i]f the employment were terminated, and the spouse was entitled presently to certain benefits, beyond prior contributions, such retirement benefits would be 'vested' and 'matured'." *Kuchta v. Kuchta*, supra, 636 S.W.2d at 665. Due to the contingent nature of pension plan benefits, the court in *Kuchta v. Kuchta*, supra, 636 S.W.2d at 665–66, observed that although a final division of marital property free of contingencies was more desirable, the variable nature of pension plans from employer to employer made it "imperative that trial courts be authorized to apply a flexible approach to accommodate the particular facts of each case."

It cannot be said in the instant case that the "flexible approach" taken by the trial court in its division of the husband's pension benefits as marital property was an abuse of discretion. The "flexible approach" taken by the trial court effected a division which minimized contingencies inherent in the husband's pension plan from the standpoint of both the husband and the wife. If the husband had been ordered to pay the wife 44% of the present actuarial value of his pension plan, to-wit, $106,497.60, he alone would bear the risk of all future contingencies. Under the provisions of the plan, if the husband died before drawing any benefits his estate would have only been entitled to his contributions to the pension plan which amounted to $32,609.00 at the time of trial. Conversely, if the wife received 44% of the present actuarial value of the husband's pension plan, she would bear no risk of future contingen-

cies. Section 452.330, supra, mandates that marital property be divided "in such proportions as the court deems just after considering all relevant factors including" those thereinafter enumerated. A division of pension benefits which places the risk of all future contingencies on an employee-spouse alone is inconsistent with a "just" division of marital property. A forced "buy out" approach, i.e., payment by the husband to the wife of an amount equaling 44% of the present actuarial value of his pension plan, would place upon the husband the entire risk of several contingencies of major import—(1) he might die before he retired and drew any benefits, (2) he might die before he drew benefits exceeding his contributions to the plan, and (3) he might die before he drew benefits totaling his apportioned share of the present actuarial value of his pension plan. The argument advanced by the husband that the wife was only entitled to 44% of his contributions to his pension plan, to-wit, $14,348.00, is likewise inconsistent with a "just" division of marital property as the uncontradicted evidence was that the present actuarial value of the husband's pension plan was $242,040.00.

In view of the "flexible approach" pursued by the trial court in dividing the husband's pension plan as marital property, supra, ordering the husband to elect the survivor annuity benefit at the "cost" of the wife did not render division of the husband's pension plan unjust from either the standpoint of the husband or the wife. Perforce, there is no merit to the husband's contention that the trial court erred in ordering him to make the election as the "cost" was borne by the wife; or to the wife's contention that her share of the pension plan should not have been reduced from 44% to 38.4% because she was substantially benefited by election of the survivor annuity benefit. It should be noted that the trial court ordered the husband to elect the survivor annuity benefit at the request and imploration of the wife. In sum, neither points (2) and (3) raised by the husband on appeal, nor the singular point raised by the wife on her cross-appeal, af-

ford any basis for relief and are ruled against the respective parties.

 The husband faults the trial court [point (4)] for treating several mutual fund accounts standing in the joint names of the husband and wife as marital property. An inheritance of $33,333.33 received by the husband during the marriage was used to fund the accounts. At the time of trial the mutual fund accounts, by virtue of accumulated earnings, had a value of $39,624.00, and the trial court divided the same equally between the husband and wife. The mutual fund accounts were placed in the joint names of the husband and wife during the marriage at the direction of the husband. Section 452.330.2, RSMo Supp.1984, provides that "[f]or purposes of sections 452.-300 to 452.415 only, 'marital property' means all property acquired by either spouse subsequent to the marriage" except, insofar as here pertinent, "[p]roperty acquired by gift, bequest, devise, or descent." The husband argues that the mutual fund accounts were non-marital property by reason of the aforementioned exception. His argument excludes recognition of the salient principle that when title to non-marital property is transferred to a husband and wife as joint tenants, a gift of the entire non-marital property to the marital estate is presumed. *Conrad v. Bower*, 533 S.W.2d 614, 622 (Mo.App.1975); *Tisius v. Tisius*, 643 S.W.2d 842, 843 (Mo.App. 1982); and *Boyce v. Boyce*, 694 S.W.2d 288, 290 (Mo.App.1985). A party challenging the change in status in legal contemplation from non-marital property to marital property has the burden of showing by clear and convincing evidence that a gift was not intended. *Conrad v. Bower*, supra; and *Tisius v. Tisius*, supra. The trial court obviously concluded that the husband failed to meet the burden imposed upon him. A review of the record according to the mandate of *Murphy v. Carron*, supra, supports the trial court's division of the mutual fund accounts as marital property.

 The husband's complaint [point (5)] that the trial court erred in valuing the marital home at $70,000.00 and ordering him to pay the wife $35,000.00 within six months after the decree became final to effect its distribution as marital property is not well taken. Regarding the $70,000 valuation placed on the marital home by the trial court, the record discloses that the wife testified that its value was $76,000.00, while, on the other hand, a real estate expert called by the husband testified that its value was $68,500.00. It was within the trial court's discretion, having been afforded the opportunity to observe the demeanor of the witnesses and judge their credibility, to value the property within the range of values testified to at trial. *Chastain v. Chastain*, 632 S.W.2d 291, 293 (Mo.App. 1982); *Oldfield v. Oldfield*, 666 S.W.2d 17, 18–19 (Mo.App.1984); *Norman v. Norman*, 604 S.W.2d 680, 684 (Mo.App.1980); and *Tatham v. Tatham*, 657 S.W.2d 717, 718–19 (Mo.App.1983). Further, the trial court was not required to accept or give greater weight to the testimony of the real estate expert called by the husband over that of the wife. *Norman v. Norman*, supra. Based on the foregoing, the trial court did not abuse its discretion in valuing the marital home at $70,000.00. Nor did it abuse its discretion in ordering the husband to pay $35,000.00 to the wife to effect its distribution as marital property. The husband had been in possession of and living in the marital home since the couple's separation. Authoritative support for the method utilized by the trial court to effect division of the marital home as an item of marital property is found in *Claunch v. Claunch*, 525 S.W.2d 788, 791 (Mo.App.1975), and *Wiebert v. Wiebert*, 632 S.W.2d 86, 87 (Mo. App.1982).

Attention now focuses on the amount of maintenance [point (6)] awarded to the wife. The decree entered by the trial court ordered the husband to pay the wife One Thousand Two Hundred Dollars ($1,200.00) per month as maintenance until the date of the husband's retirement. By reason of the wife's divisional share of the husband's pension plan, the maintenance award, as contemplated by the trial court, was not maintenance in gross but periodic mainte-

nance terminating no later than an uncertain but determinable future date. The husband vigorously contends that the trial court abused its discretion in awarding such an amount because it grossly exceeded the difference between her reasonable needs and the income she would receive from employment and income-producing property awarded her in the division of marital property. Section 452.335.1(1)(2), RSMo 1978, insofar as here pertinent, authorizes a trial court to grant maintenance to a spouse "only if it finds that the spouse seeking maintenance" is without sufficient property, "including marital property apportioned to him", to provide "for his reasonable needs" and is "unable to support himself through appropriate employment." If the trial court finds that the statutory criteria for awarding maintenance is met, § 452.335.2(1)–(7), supra, provides that the "maintenance order shall be in such amount and for such period of time as the court deems just, ... after considering all relevant factors, including" (1) the ability of the spouse seeking maintenance to independently meet his needs through property or employment, (2) the time needed for the spouse seeking maintenance to acquire the education or training necessary to obtain "appropriate employment", (3) the standard of living established during the marriage, (4) the duration of the marriage, (5) the age and physical and emotional condition of the spouse seeking maintenance, (6) the ability of the paying spouse to meet both his needs and the needs of the spouse seeking maintenance, and (7) the conduct of the spouse seeking maintenance during the marriage.

The Dissolution of Marriage Act's conceptual emphasis on marriage as a partnership is vividly demonstrated by § 452.335, supra. The sum of the factors enumerated therein for consideration in awarding maintenance bespeak of a legislative intent to terminate the "marital partnership" and completely avoid, or in any event minimize to the extent possible, any continuing financial dependency between spouses. As observed in Brueggemann v. Brueggemann, 551 S.W.2d 853, 856–57 (Mo.App.1973),

"[s]pecification in the statute of the earning capacity of the spouse seeking maintenance and the division of property as the principal means of provision for the reasonable needs of the spouse seem to reflect a legislative intent to avoid, if possible, the imposition of continuing financial obligation to the spouse seeking maintenance."

A recitation of salient facts bearing upon the award of $1,200.00 per month to the wife for maintenance is now in order. The marriage was of 36 years duration. Two children were born of the marriage, both of whom are emancipated. Although the wife was employed full-time outside the home during the early years of the marriage, she ceased working when the first child arrived and thereafter devoted herself to rearing the children born of the marriage and providing a home for the family. The standard of living established during the marriage, although not luxurious, was certainly comfortable by any measurable standard. At the time of trial the wife had resumed full-time employment as a "payroll clerk" and her monthly "take home" pay was $940.42. The wife estimated her present monthly living expenses at $1,293.50. The husband estimated his anticipated monthly expenses at $2,302.00, including approximately $538.00 in extraordinary expenses (support of his mother, etc.) which would not be incurred by the wife. The husband tacitly admitted that the wife's expenses in maintaining the standard of living which had been established during the marriage would be $1,764.64, the same as what he anticipated his monthly expenses would be after deducting the extraordinary expenses heretofore mentioned. Apart from her interest in the husband's pension plan and certain items of tangible personal property, e.g., an automobile, furniture, household accessories and appliances, the wife received intangible assets approximating $65,700.00 in value as her divisional share of marital property. The wife had no separate property. The husband in addition to certain items of tangible personal property, received intangible assets approximating $40,600.00 in

value plus the marital home (fairly valued at $35,000.00 after deducting the amount of the lien in favor of the wife) as his divisional share of marital property.

According to the wife's testimony, she theorized that she was entitled to maintenance in an amount which would equalize her "monthly gross income" with that of her husband's monthly gross income from his employment after deducting the amount of monthly maintenance she was claiming. The wife's monthly "gross pay" was $1,181.00; the husband's monthly gross income from his employment was $3,536.00, and the wife was awarded $1,200.00 per month maintenance. Mathematically, the $1200.00 per month maintenance awarded the wife, after rounding off the figures she relied upon, equalized, in the context used by the wife, the "monthly gross incomes" of the respective spouses. On appeal the wife seeks to justify the amount of maintenance she was awarded under her innovative theory by emphasizing four of seven factors enumerated in § 452.335, supra,—the standard of living established during the marriage, the duration of the marriage, the ability of the husband to meet his needs while meeting those of his wife, and her good conduct during the marriage.

■■■■ Regarding the standard of living established during the marriage, the first factor emphasized by the wife, the most favorable view of the record from the wife's standpoint is that $1,764.00 per month would permit her to maintain a standard of living comparable to that established during the marriage. By statute, § 452.335, supra, courts are directed to consider the standard of living established during the marriage in their overall assessment of the amount of maintenance to be awarded. This factor is of particular importance where the marriage is one of long duration. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977).

■■■■ Regarding the duration of the marriage (36 years), the second factor emphasized by the wife, additional importance attaches thereto where the wife, while serving as a housewife and rearing the children born of the marriage, foregoes development of her career and attendant advancements and salary increases which might have reasonably been expected during said period of time, while the husband is free to advance his career and benefit from attendant advancements and salary increases during the same period of time. *In re Marriage of K.B.*, 648 S.W.2d 201, 205 (Mo.App.1983).

■■■■ Regarding the ability of the husband to meet his reasonable needs while meeting those of the wife, the third factor emphasized by the wife, the conceptual emphasis upon marriage as a partnership underpinning § 452.335, supra, would be thwarted if the ability of the husband to pay was exclusively seized upon to justify an otherwise excessive and unwarranted maintenance award. As held in *Raines v. Raines*, 583 S.W.2d 564, 567 (Mo.App.1979), the fact that a husband has the means to provide a greater portion of the wife's needs "does not mean he must." See also *Rasmussen v. Rasmussen*, 627 S.W.2d 117, 120 (Mo.App.1982). Conversely, the conceptual emphasis upon marriage as a partnership would also be thwarted if a spouse was required to pay maintenance in an amount exceeding his ability to meet both his needs and that of the spouse seeking maintenance. As observed in *Brown v. Brown*, 537 S.W.2d 434, 437 (Mo.App.1976), "[a]n award [of maintenance] should not exceed the husband's capacity to provide".

■■■■ Regarding the fourth factor emphasized by the wife, her "good" conduct during the marriage, note is taken that the parties stipulated that marital misconduct was not an issue and, moreover, the evidence revealed that both spouses were free of any marital misconduct. Cases addressing the "conduct of a party seeking maintenance during the marriage" as provided in § 452.335.2(7), supra, do so in terms of "misconduct" rather than "good" conduct. See, e.g.: *Schnitker v. Schnitker*, 646 S.W.2d 123, 125–26 (Mo.App.1983); *Rasmussen v. Rasmussen*, supra, 627 S.W.2d

at 119; *J.A.A. v. A.D.A.*, 581 S.W.2d 889, 897 (Mo.App.1979); and *In re Marriage of Carmach*, 550 S.W.2d 815 (Mo.App.1977). Inclusion of the marital conduct factor in § 452.335, supra, is a departure from § 308 of the Uniform Marriage and Divorce Act which makes no mention of marital conduct as a relevant factor in determining maintenance awards. Inclusion of the marital conduct factor in § 452.335.2(7), supra, appears to be a lingering vestige of the law which preceded enactment of the Dissolution of Marriage Act whereby marital misconduct was penalized and relied upon to defeat or reduce otherwise justified amounts of alimony. See, e.g.: *Willis v. Willis*, 274 S.W.2d 621 (Mo.App.1954); and *Stokes v. Stokes*, 222 S.W.2d 108 (Mo.App. 1949). This court concludes that retention of this vestige of the prior law in no way evinces a legislative intent to reward the good conduct of a spouse seeking maintenance at the expense of a spouse ordered to pay maintenance. The good conduct of a spouse during marriage evidences fulfillment of the marriage vow and is a sufficient reward in and of itself. It defies credulity to yield to the wife's argument that it was intended to impose a penalty on the husband whose conduct, as previously noted, was also exemplary.

 By way of recapitulation, $1,764.00 per month would permit the wife to maintain a standard of living comparable to that established during the marriage under the most favorable view of the evidence from her standpoint. Her "take home" pay from her employment is $940.00 per month. The difference between $1,740.00 and $940.00 is $824.00, and the trial court's award of maintenance to the wife in the amount of $1,200.00 per month was grossly excessive. An award of maintenance to the wife in the amount of $350.00 per month, coupled with what she could reasonably expect to earn from her divisional share of intangible personal property if prudently invested, (even if it is determined that she should bear her own attorney fees and costs of litigation), would fairly approximate the monthly amount required for her to maintain a standard of living compa-

rable to that established during the marriage. By the same token, the husband would have enough left, when coupled with an amount he could reasonably expect to earn from his divisional share of marital property if prudently invested, which would fairly approximate his monthly needs to maintain a standard of living comparable to that established during the marriage. Subliminally, it appears the trial court either approached the award of maintenance from the standpoint of equalizing the "gross incomes" of the spouses, as advocated by the wife, or from the standard of giving the wife immediate benefit of her awarded portion of the husband's pension plan before any benefits to her came into fruition. The practical impact of the latter approach might well be viewed as a means of forcing the husband to take early retirement. Either approach was inconsistent with the letter and spirit of § 452.335, supra, and all relevant evidence attendant thereto, and cannot stand. This court is constrained to hold that comportable with the evidence and § 452.335, supra, $350.00 per month represents a "just" award of maintenance to the wife.

 The husband's seventh and final point on appeal is now reached. The trial court is charged with having erred in ordering the husband to pay to the wife $13,-607.77 to cover her attorney fees and costs of litigation incurred in the dissolution action. From an evidentiary standpoint, the record reveals the wife's attorney performed services and incurred expenses on her behalf in connection with the litigation in the amount of $10,802.77, and, in addition thereto, an expert witness called by the wife submitted a charge of $2,805.00. The aforementioned, totaling $13,607.77, was the amount the husband was ordered to pay to the wife. The record also reveals that the wife previously made a partial payment of $500.00 to the expert witness, as well as $1,000.00 to her attorney. The $1,000.00 paid to her attorney came from a joint checking account which she and her husband had. Deduction of the aforesaid

amounts leaves $12,107.77 in attorney fees and litigation expense presumably unpaid.

A trial court is authorized under § 452.355, RSMo 1978, to order one party to pay attorney fees and costs of litigation to another party "after considering all relevant factors, including the financial resources of both parties." This minimal statutory language was given greater dimension in Kieffer v. Kieffer, 590 S.W.2d 915, 919 (Mo. banc 1979): "However, § 452.355 does make clear that the financial resources of the parties must be considered. *Other factors are to be taken into account as well. How they balance will vary from case to case and certainty of result cannot be projected.* Only when the trial court is shown to have abused the broad discretion with which it is vested in this regard should its award (or orders) be overturned." (emphasis added) Cases postdating *Kieffer* indicate that the "financial resources" of the respective parties contemplates consideration of which party is best financially able to bear the wife's attorney's fees and costs of litigation. See, e.g.: *In re Marriage of Dusing,* 654 S.W.2d 938, 947–48 (Mo.App.1983); and *D.E.W. v. M.W.,* 552 S.W.2d 280, 284 (Mo. App.1977). After reducing the amount of maintenance to be awarded the wife from $1200.00 per month to $350.00 per month, supra, her monthly "income" from employment and maintenance, coupled with the amount she could reasonably expect to earn from her divisional share of intangible marital property if prudently invested, even if she bears her own attorney fees and costs of litigation, would permit her to maintain a standard of living comparable to that established during the marriage.

The husband's net income from his employment, according to the record, after deducting $350.00 per month for maintenance, amounts to $1886.00 per month and his anticipated monthly expenses, including certain extraordinary items, amounts to approximately $2,302.00 per month. After taking into consideration the amount he could reasonably expect to earn from his divisional share of marital property if prudently invested, his available monthly income and anticipated monthly expense would likewise appear to fairly balance out. The record also discloses that the husband incurred attorney fees and litigation costs in his own behalf amounting to $16,300.00 prior to the time of trial, $8,200.00 of which had been paid by a loan which he obtained from his brother.

From the standpoint of available monthly funds, the financial ability of the respective spouses to pay the attorney fees and costs of litigation incurred by the wife is in equipoise. Perforce, there is no escape from the fact that payment of attorney fees and costs of litigation incurred by both parties will have to be met from marital property apportioned to one or the other, or both, of the spouses. To burden the husband with the wife's attorney fees and costs of litigation, on top of attorney fees and costs of litigation he incurred on his own behalf, would, from a pragmatic standpoint, result in a highly disproportionate division of the marital property. Referring once again to *Kieffer v. Kieffer,* supra, 590 S.W.2d at 919, other factors in addition to the "financial resources of the parties" are to be taken into consideration and "[h]ow they balance will vary from case to case and certainty of result cannot be projected." After balancing all relevant factors, this court concludes that the trial court abused its discretion when it imposed upon the husband the obligation to pay the attorney fees and costs of litigation incurred by the wife. For reasons heretofore stated, this court concludes that the wife should bear the attorney fees and costs of litigation she incurred in this action.

In conclusion, that portion of the original decree entered by the trial court in this cause on December 19, 1984, relating to maintenance is reversed and set aside with directions to the trial court to enter judgment ordering the husband to pay $350.00 per month to the wife as periodic maintenance, said monthly payments to terminate no later than the date of the husband's

retirement from his present employment; additionally, that portion of the original decree entered by the trial court on December 19, 1984, ordering the husband to pay to the wife $13,607.77 for attorney fees and costs of litigation is reversed and set aside with directions to the trial court to delete the same in its entirety; in all other respects, the original decree entered by the trial court on December 19, 1984, is affirmed.

Affirmed in part and reversed and remanded in part with directions to the trial court to amend its decree entered December 19, 1984, in accordance with the directions hereinabove set forth.