Gale B. CONAWAY, Respondent,

v.

Judith E. CONAWAY, Appellant.

No. WD 50039.

Missouri Court of Appeals,
Western District.

June 6, 1995.

John Richard Shank, Jr., Kansas City, for appellant.

Michael P. Harris, St. Joseph, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

HANNA, Presiding Judge.

Appellant, Judith Conaway, appeals from the trial court's entry of a decree of dissolution of marriage and Qualified Domestic Relations Order.

The parties were married on May 15, 1965, and separated on August 31, 1990. The husband has been employed with the General Motors Corporation (G.M.) since June 10, 1964. The wife has been employed by the Quaker Oats Company for the past nine

years. The husband filed his petition for dissolution of marriage in September 1990. After a hearing on March 4, 1994, the trial court entered an interlocutory order dissolving the marriage. A final decree of dissolution was entered on May 19, 1994. Wife appeals contending the trial court erred in the division of property.

 The wife first contends the trial court erred in valuing her husband's pension as of the date of their separation. The trial court determined that the husband's pension presented a wide possibility of options and values depending on when the husband might choose to retire. In order to assure a fair and accurate division of the marital portion of the husband's pension benefits, the trial court utilized a deferred percentage formula (sometimes referred to as the "wait and see" method)[1] through a Qualified Domestic Relations Order. In determining the wife's marital interest in the pension benefits, the trial court utilized the following formula approved in *Lynch v. Lynch*, 665 S.W.2d 20, 23 (Mo. App.1983):

$$\frac{1}{2} \times \text{monthly benefits when and if received} \times \frac{\text{years of parties' marriage}}{\text{years of husband's employment with the company at retirement}}$$

Applying the *Lynch* formula in this case, the trial court awarded the wife her marital interest in the husband's pension benefits by applying the formula based on the 25.3 years the parties were married before they separated.

Under the *Lynch* formula, the numerator represents the number of years the parties were married during the husband's employment. The Conaways were married on May 15, 1965, less than one year after the husband became employed with G.M. The husband continued to work for G.M. throughout the marriage. At the time of the dissolution hearing, the parties had been married twenty-eight years and ten months. The trial court found that the husband's pension was marital property. However, in its formula for determining the wife's marital interest in the pension benefits, the court did not include the post-separation years of the marriage.

Missouri courts have generally held that the proper date for valuing marital property in a dissolution proceeding is the date of the trial, *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987), not the date of separation. *Hankins v. Hankins*, 823 S.W.2d 161, 162 (Mo.App.1992).

While we recognize that the trial court employed the more flexible "wait and see" approach, rather than an "immediate offset" method, in dividing the husband's pension benefits, it was, nevertheless, improper for the trial court to utilize the separation date (which was more than three years before the dissolution hearing) in calculating the wife's marital interest in the pension benefits. The trial court should have included the total number of years 'the parties were married (during the husband's employment) in order to arrive at a just and equitable division of the husband's pension benefits. Since the parties had been married nearly 29 years at the time of the dissolution hearing in March 1994, rather than 25.3 years, the calculations made by the trial court do not accurately reflect the length of the marriage. Therefore, the portion of the judgment dividing the husband's pension benefits is reversed and the cause remanded with directions for the court to utilize the date of the dissolution hearing[2] rather than the date of the separa-

1. The "wait and see" approach is a method for dividing the marital portion of pension benefits in order to equalize the division of risk that the pension may fail to mature. *Lynch v. Lynch*, 665 S.W.2d 20, 23 (Mo.App.1983). Using this approach, the court may order an appropriate share of the ultimate benefits to be paid, if, as and when they are paid. Pensions and Deferred Compensation, II Mo. Family Law, § 15.15 (Mo. Bar 4th ed. 1988).

2. We note that the wife asserts on appeal that the trial court should have valued the husband's pension as of the date of the final decree which was issued two months after the trial. However, this assertion was not presented to the trial court and in her motion for new trial, the wife argued that the proper valuation date is the date of the trial. Moreover, the record shows that the marriage was dissolved on the day of the trial.

tion in its formula for determining the wife's marital interest in the pension benefits.

■ The wife next contends that the trial court abused its discretion in refusing to award her the survivor benefit option in her husband's pension plan. At trial, the husband testified that his G.M. retirement plan included a provision called a "survivor benefit option." He indicated that if he did not elect to take the survivor benefit option, which he would have to pay for, any pension benefits would terminate upon his death. However, if he elected to take the survivor benefit option, then upon his death, the surviving beneficiary would continue to receive benefits so long as he or she lives.

The wife cites *Weiss v. Weiss,* 702 S.W.2d 948 (Mo.App.1986), and *Campbell v. Campbell,* 668 S.W.2d 580 (Mo.App.1984), in support of her argument. In *Weiss,* this court determined that it was not an abuse of discretion for the trial court to order the husband to elect the survivor annuity benefit and designate his wife as beneficiary. As in the case at bar, the husband's pension benefits would terminate upon his death unless he elected to take the survivor benefit option. *Weiss,* 702 S.W.2d at 952. The trial court utilized a "flexible approach" in its division of the pension benefits as marital property and determined that the wife should bear the cost of the survivor benefit election and accordingly reduced the wife's share in the husband's pension plan. *Id.*

Similarly, in *Campbell,* the Eastern District found that the trial court had not abused its discretion in ordering an election of a survivor benefit annuity under the husband's pension "to insure a protection to the wife against a cessation or reduction of her interests in the retirement benefits." *Campbell,* 668 S.W.2d at 583.

The record shows that at the time of the dissolution hearing, the parties had been married nearly 29 years. As of June 10, 1994, the husband would have completed 30 years of service with G.M. and become eligi-

ble, though not required, to receive monthly lifetime pension benefits. If the husband elects to retire prior to reaching age 62, and after 30 years of service, he will also receive a supplemental monthly temporary benefit in the amount of $1000 until he reaches age 62 plus one month.[3] The court found both of these monthly benefits to be marital property and subject to division.

■ Retirement benefits are frequently the most valuable asset belonging to a married couple. *Kuchta v. Kuchta,* 636 S.W.2d 663, 664 (Mo. banc 1982). Mr. Conaway does not dispute that his pension is the single most valuable asset in the marital estate. Moreover, "a pension is not earned on the last day of employment prior to retirement, but is a form of deferred compensation which is attributable to the entire period in which it was accumulated." *Id.* at 665. "A division of pension benefits which places the risk of all future contingencies on an employee-spouse alone is inconsistent with a 'just' division of marital property." *Weiss,* 702 S.W.2d at 953.

The trial court determined that the wife was entitled to a proportionate share of the husband's pension benefits. The wife testified that she would be willing to pay for the cost of the survivor benefit option. We conclude that she is entitled to the same proportionate share of the survivor benefit option, at her own cost, to ensure against future contingencies and to protect her interest in the marital portion of the pension benefits.

■ In her final point, the wife contends the trial court abused its discretion in assessing a present value to her vested, but nonmatured pension plans. She complains that by assigning a present value to the pension plans and setting them aside to her, the court burdened her with the entire risk of loss that the pension benefits will never be collected.

"[T]he trial court is vested with considerable discretion in dividing the marital property and an appellate court will interfere only if the division is so heavily and unduly weight-

---

**3.** In his brief, the husband requested review as to whether it was proper for the trial court to include the supplemental temporary benefit in its formula for determining the wife's marital portion of the pension benefits. However, this issue was not properly presented in a cross-appeal and, therefore, the wife's motion to strike that portion of the husband's brief requesting affirmative relief is sustained.

ed in favor of one party as to amount to an abuse of discretion." *In re Marriage of Cope,* 805 S.W.2d 303, 307 (Mo.App.1991) (*quoting Dardick v. Dardick,* 670 S.W.2d 865, 869 (Mo. banc 1984)).

At the time of the trial, the wife had two vested, nonmatured pension plans: a Quaker Oats pension plan and a Retail Food Store pension plan. The only expert to testify at trial as to the value of the parties' pension plans was Robert Sanger, a certified public accountant. He valued the Quaker Oats pension at $22,069.90 and the Retail Food Store plan at $8,725.74. The wife presented no expert testimony to contradict these figures.

In its final decree, the court found that the wife's two pension plans should be reduced to present value because they do not involve the wide range of options, values and times of retirement that exist in the husband's pension plan. Both pension plans were awarded to the wife in the division of the marital property. The husband received no interest in the wife's pensions. She claims that her two pensions represent 57 percent of her share of the marital assets and that this property division was unfair because the husband received more risk-free tangible assets.

The record shows that the wife was awarded $69,871 as her share of the marital assets (excluding the husband's pension), plus $14,-867 which the husband was ordered to pay her to equalize the property division. Therefore, the total marital share awarded to the wife was $84,738. The two pensions represent approximately 36 percent of the wife's portion of the marital estate (including the amount of the equalization). The husband was awarded $99,605 in marital assets. However, after subtracting the $14,867 due as equalization of the property division, the total amount awarded to the husband (excluding his pension) is also $84,738. Considering the division of the property by the trial court, the wife's right to purchase the survivor benefit option in the husband's policy and the record before us, we conclude that the trial court did not abuse its discretion in assessing a present value to the wife's pensions and awarding both pensions to her.

The portions of the judgment dividing the husband's pension benefits and awarding his survivor benefit option are reversed and the cause is remanded with directions to enter judgment in accordance with this opinion. In all other respects, the judgment is affirmed.

All concur.