Lisa L. BALDWIN, Appellant/Cross–Respondent,

v.

Richard J. BALDWIN, Jr., Respondent/Cross–Appellant.

Nos. 66354, 66455.

Missouri Court of Appeals, Eastern District, Division Four.

July 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 8, 1995.

W. Morris Taylor, William K. Meehan, W. Morris Taylor, P.C., St. Louis, for appellant/cross-respondent.

Alan C. Kohn, John A. Klobasa, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, for respondent/cross-appellant.

KAROHL, Judge.

Lisa Baldwin appeals a decree of dissolution terminating her twenty-eight year marriage to Richard Baldwin. The trial court dissolved the marriage and awarded periodic maintenance to wife and separate property to both parties. It also distributed marital property and ordered the sale of the marital home and distribution of the proceeds. The trial court twice amended the maintenance award from the initial amount of $3,500 per month, to $5,000 per month, and then to $6,500 per month.

Wife asserts four points on appeal. She contends the trial court erred in: (1) ordering the sale of the marital home; (2) deducting $360,852 from the marital estate to account for future tax liability made necessary by 1986 tax code revisions on a tax shelter; (3) awarding wife only $6,500 maintenance; and (4) awarding husband certain bank accounts as separate property. Husband's cross-appeal challenges the award of maintenance. He contends wife does not meet the statutory requirements under § 452.335 RSMo 1986. He argues the court over valued his income. We affirm.

The parties were married on August 7, 1965. They had four children. Custody and support of the children is not at issue in this case. Husband began a medical practice as an orthopedic surgeon in 1974. He quit practicing medicine in 1988. The family was supported throughout the marriage with assets and income derived from trust funds husband received from his family.

Wife earned a bachelor's degree from Lindenwood College in 1964. She engaged in three different business ventures during the marriage. She worked as an interior garden designer for approximately two years beginning about 1974. Husband asked her to quit working and spend more time with the children. In approximately 1983, she studied gemology and formed a company that designed and sold jewelry. Later in about 1985, she helped form a partnership that allowed people to purchase lottery tickets from several different states. This venture went bankrupt.

The trial court ordered the parties to sell the marital home at # 1 Ladue Lane. It valued the home at $1,250,000 and awarded 45% of the net proceeds to wife and 55% of the net proceeds to husband. It ordered the listing value to decrease by $100,000 per month with a ceiling of $1,500,000 and a floor of $1,100,000. Wife argues the trial court erred in finding the real estate could not be divided in kind and the sale was in the best interest of one or both parties. Moreover, the very large house exceeds the reasonable need of wife where the children are emancipated or no longer living at home. We will not disturb the trial court's order unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The sale of marital property is within the power of the trial court in a dissolution of a marriage action. *Swinford v. Swinford*, 682 S.W.2d 189 (Mo.App.1984). A trial court is vested with considerable discretion in dividing marital property. *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984). We will interfere with the decision only if the division of property is heavily and unduly weighted in favor of one party or amounts to an abuse of discretion. *Id.* There are two general conditions that are sought before a court orders a sale: (1) a finding that the property cannot be divided in kind, and (2) a finding that a sale would be in the best interest of one or both of the parties. *Swinford*, 682 S.W.2d at 191.

Wife asserts the court could have awarded the marital home to her in kind by

some combination of assets and or cash. She also contends the listing value schedule established by the court imposed "erroneous and Draconian terms." The trial court found the parties' marital property had a total value of $1,454,298. This included the marital home with an estimated value of $1,250,000. The marital home accounted for approximately 86% of the marital assets. In addition, maintenance on the home was approximately $10,400 each month. The marital assets were insufficient to offset the value of the home if awarded to one party. The expense to maintain and the absence of marital assets made the sale in the best interest of the parties. The terms for sale protected both parties from an extended financial drain. The trial court did not abuse its discretion and its order of a sale disposed of the property in a manner fair to both parties. *Breda v. Breda*, 788 S.W.2d 769, 771 (Mo. App.1990).

Wife also contests the trial court's deduction of $360,852 from the marital estate for alleged tax liabilities. A trial court may consider tax consequences when dividing marital assets. *Keller v. Keller*, 877 S.W.2d 192, 196 (Mo.App.E.D.1994); *Clark v. Clark*, 801 S.W.2d 95, 99 (Mo.App.1990). It may not make deductions to the marital estate for estimated tax liabilities absent sufficient evidence to support its findings. *Goller v. Goller*, 758 S.W.2d 505 (Mo.App.1988). Husband presented evidence of the tax liability at trial. His accountant testified the deferred tax liability equalled $360,852. It would be due starting in 1997. The accountant also testified there were other variables that might mitigate the liability, including sale of the property. He stated that inquiries about sale of the property failed to find a buyer and there were no foreseeable buyers. The trial court was free to accept this evidence in evaluating the marital property. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 826 (Mo. banc 1984). It agreed with husband that "this is a realistic deduction from the marital assets." The evidence supported a finding there would be a tax liability. The only doubt was about the precise amount of the tax. In light of the foregoing, we find no abuse of discretion in the reduction of the impending tax liability from the marital estate.

Both wife and husband contest the amount of the maintenance award. Wife requests maintenance be increased to $20,000 per month. Husband believes maintenance should be reduced to $1,000 per month or eliminated entirely. The trial court has broad discretion in awarding spousal maintenance. *Mika v. Mika*, 728 S.W.2d 280, 284 (Mo.App.1987); *Mills v. Mills*, 663 S.W.2d 369, 374 (Mo.App.1983). The amount of maintenance is based on need and ability to pay. Section 452.335 RSMo 1986. The trial court first awarded wife $3,500 per month. It then amended the award to $5,000 per month and ultimately awarded $6,500 per month. She will receive $78,000 per year.

Wife and husband lived in a large and expensive home. At various times they employed a yard man, cook and maid. Wife was responsible for maintaining and managing the marital residence. Maintenance of the property cost approximately $10,400 per month.

The trial court examined the conduct of the parties during the marriage. It found the couple's extravagant life style caused friction during the marriage. They belonged to numerous dinner and country clubs and travelled extensively throughout the world. Wife received $4,000 per month for household purchases and charged between $10,000 to $20,000 on credit cards each month. Husband testified he repeatedly asked wife to curb her spending habits. Wife conceded husband complained about her spending. But, she asserted many of the expenses were equally important to husband. There was also evidence of wife's excessive drinking. The court characterized her drinking as continuous and destructive to the marriage bond as well as injurious to the couple's social and business relationships.

Wife contends she is entitled to additional maintenance because her husband discouraged her from working outside the home. The trial court found husband did discourage wife from continuing her first business of interior garden design. He testified he believed wife was having an affair with her business partner. She denied being unfaithful. He gave her an ultimatum to either quit

the business or get a divorce. She sold the business. Husband conceded he did not want wife to work while the children were young. Wife later established business ventures of jewelry designing and lottery ticket purchasing. There is no evidence husband discouraged her in these later business endeavors. Nor is there evidence she is not now able to work for wages or profits.

In 1991, the family spending totalled $595,000. In 1992, they spent $632,000. Husband testified his income from his trusts and investments after taxes is between $15,000 and $17,000 per month, at most, $204,000 per year. His income and expense statement showed a total of $236,000 annual income. The difference between income and spending was covered by liquidation of the husband's separate capital assets.

■■■ Wife requests her maintenance be increased to $20,000 per month. She based this request on her standard of living during the marriage and husband's ability to pay. The standard of living established during the marriage is a factor in determining the amount of maintenance to be awarded. *Weiss v. Weiss,* 702 S.W.2d 948, 956 (Mo. App.1986). It is an important factor where the marriage is one of long duration. *Id.* However, an excessive standard of living does not equate to reasonable needs under the statute. *Newman v. Newman,* 717 S.W.2d 568, 570 (Mo.App.1986); Section 452.335 RSMo 1986. The trial court found the couple's excessive spending during the marriage was not determinative of reasonable maintenance.

■■■ The trial court found "[wife] is an intelligent, healthy woman with considerable business experience and much talent, and that she can make substantial contributions to her own support through appropriate employment." It properly examined the lifestyle of the couple during the marriage. It took into account earning capacity and income, the substantial wealth of both parties, and the duration of the marriage. The court found husband's yearly income to be approximately $250,000. Husband's statement of income shows approximately $19,660 per month. At trial, husband testified his gross average monthly income was $22,700 or $272,400 per year. The amount the trial court awarded as maintenance to wife was within its discretion under § 452.335 RSMo 1986.

■■■ Wife's final point concerns the trial court awarding husband six investment accounts held in a revocable trust as his separate property. These accounts consist mainly of securities gifted to or inherited by husband from his family. Property earned during the marriage is presumed to be marital property. *Hoffmann,* 676 S.W.2d at 822. Property not identified as marital property is presumptively separate. *Id.* Here, wife asserts husband commingled his separate property with marital property to transform it into marital property. She relies on the testimony of both husband and his accountant from the trial concerning assets from the sale of a marital home.

■■■ Husband contends no extensive period of commingling of principal took place. Both husband and accountant testified the marital funds were traceable in and out of the accounts in dispute and separable from income. The trial court has discretion in determining the credibility of witnesses. *Frerichs v. Frerichs,* 704 S.W.2d 258 (Mo. App.1986). It awarded the accounts to husband after hearing extensive testimony about the management and origin of the funds. Moreover, wife did not contest the separateness of the accounts prior to or during the trial. Her property statement listed the accounts as husband's separate property. The trial court did not abuse its discretion in awarding the accounts to the husband.

We reject husband's cross-appeal on the maintenance award. We have found it was supported by the evidence and within statutory guidelines considering husband's ability to pay and wife's needs following the dissolution of a twenty-eight year marriage.

We affirm.

AHRENS, P.J., and DOWD, J., concur.